# CHARLESTON.

STATE v. I. W. LARUE.

(No. 4901.)

Submitted March 24, 1925.          Decided April 24, 1925.

1. INDICTMENT AND INFORMATION—*Indictment for Embezzlement as Set Out in Statute Held Sufficient.*

   An indictment for embezzlement, as set out in section nineteen, of chapter one hundred forty-five of the code, is sufficient   (p. 680).

   (Embezzlement, 20 C. J., § 55.)

2. CRIMINAL LAW—JURY—*Venireman's Opinion to Disqualify Him Must be Substantial; Findings of Trial Court as to Whether Venireman is Disqualified by Opinion will Not be Set Aside, except for Manifest Error.*

   To have the effect of disqualifying a venireman, his opinion must be substantial and not mere impression which will not interfere with his fairness. The question presented as

to his qualification is one of mixed law and fact. The finding
of the trial court upon that issue will not be set aside unless
the error is plainly manifest. (p. 684).

(Criminal Law, 17 C. J. § 3580; Juries, 25 C. J. §§ 364, 367, 458.)

3.   INDICTMENT AND INFORMATION—*Offenses Representing One Continuous Transaction May be Joined as Distinct Offenses in Different Counts of Indictment.*

If all of the offenses charged in one or more counts of an
indictment represent but one continuous transaction, it is well
settled in this state, that they may be so joined as distinct
offenses in different counts, and that where properly joined
as distinct offenses, unless they appear on the face of the indictment to involve a different transaction, a motion to quash
for mis-joinder should be overruled. (p. 686.)

(Indictments and Informations, 31 C. J. § 344.)

4.   SAME—*Accused is Not Entitled, as Matter of Right, to Compel Election Between Several Offenses Joined as Separate Counts in One Indictment Springing Out of Substantially Same Transaction.*

A joinder as separate counts in one indictment of several
offenses, which though distinct in point of law, yet spring
out of substantially the same transaction, cannot operate to
the legal prejudice of the accused; and he is not entitled as a
matter of right in such case to compel an election. (p. 687).

(Indictments and Informations, 31 C. J. § 344.)

5.   CRIMINAL LAW—*Refusal to Compel Prosecution to Elect Upon What Act of Embezzlement Conviction Will be Asked Not Error.*

On the trial of an indictment for embezzlement, there
is no error in the court refusing to compel the prosecution to
elect upon what alleged act of embezzlement a conviction will
be asked, as embezzlement may, and often does, consist of
many acts done in a series of years by virtue of the relations
existing between the employer and the employee. (p. 688).

(Criminal Law, 16 C. J. § 2173.)

6.   SAME—*Receiving in Evidence Entry by Person in Regular course of Business Recording Oral or Written Report of Other Persons to Him in Regular Course of Business Held Not Error.*

Where an entry is made by one person in the regular course
of business, recording an oral or written report, made to
him by one or more other persons in the regular course of
business, of a transaction lying in the personal knowledge of
the latter, there is no objection to receiving that entry under

the exception to the hearsay rule of books of original entry, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in the particular case outweigh the probable utility of doing so.   (p. 689).

(Criminal Law, 16 C. J. § 1527 [1926 Anno.])

7.   SAME—*Verification of Books of Entry by Supervising Officer of Corporation Held to Render Them Admissible.*

In such case, for the record of entries made in the established course of business on the original books of entry of a corporation, to be admissible as evidence, it is sufficient if the books were verified on the stand by a supervising officer who knew them to be the books of original entry, of the department or corporation under his supervision or control.   (p. 690).

(Criminal Law, 16 C. J. § 2495.)

8.   SAME—*Instruction Stating Law in Abstract and Another Applying Stated Proposition to Facts in Issue May be Treated as Single Instruction.*

An instruction stating the law in the abstract and another applying the legal stated proposition to the facts in issue may be treated as a single instruction.   (p. 696).

(Criminal Law, 16 C. J. 17 C. J. § 3579.)

9.   SAME—*Conduct of Trial Not Reviewed, Except for Abuse of Discretion of Trial Judge.*

The conduct of the trial must necessarily be left largely to the discretion of the presiding judge—a discretion which cannot, in its very nature, be made a subject of review, by this Court, except in a clear case of abuse of that discretion.   (p. 695).

(Embezzlement. 20 C. J. § 79.)

(NOTE:—Parenthetical references by Editors.   C. J.—Cyc.   Not part of syllabi.)

Error to Circuit Court, Mason County.

I. W. Larue was convicted of embezzlement, and he brings error.

*Affirmed.*

*F. G. Musgrave* and *Somerville & Somerville,* for plaintiff in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *Robert L. Hogg,* Prosecuting Attorney, for the State.

WOODS, JUDGE:

The defendant was indicted for embezzlement, and on the trial was found guilty and by the judgment complained of adjudged to serve a term of two years in the penitentiary.

Our statute, section nineteen, chapter one hundred forty-five, code, provides: "If any officer, agent, clerk or servant of this state, or of any county, district, school district or municipal corporation, * * * or other corporation, * * * embezzle or fraudulently convert to his own use, bullion, money, bank notes, security for money, or any effects or property of any other person, which shall have come into his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of larceny thereof. In the prosecution of any such officer, agent, clerk or servant, charged with such embezzlement, fraudulent conversion or larceny, if it appear that the possession of such bullion, money, bank notes, security for money, or other property is unlawfully withheld by such officer, agent, clerk or servant, from the person or persons entitled thereto, and that such officer, agent, clerk or servant has failed or refused to restore or account for such bullion, money, bank notes, security for money, or other property, within thirty days after proper demand has been made therefor, such accused officer, agent, clerk or servant shall be presumed to be guilty of such offense."

In 1917, Lewis District, in Mason County, voted bonds for the construction of hard surfaced roads in said district, at which time, William Jividen, Hugh Daugherty and I. S. Dabney were members of the county court of said county. The defendant was then engaged in handling and selling cement, at the City of Point Pleasant. He had erected buildings for the storing and keeping of said material. On July 3, 1917, the said county court entered into a contract with the defendant to furnish all the cement, to be used in the construction of the cement roads in Lewis District in an amount not to exceed thirty-three thousand barrels. The cement was shipped to the defendant whereupon he would be paid by the county court, and after such payment he was permitted to retain the cement in his exclusive custody and

control, for the use of the county. While this cement belonging to the county court, and having been paid for by it, was still in the custody of the said defendant the state maintains that the defendant made sale of an enormous quantity thereof to various individuals throughout Mason county, and the said defendant received and appropriated to his own use the money therefor. An inspection of the records of the county court was made to determine how much cement the defendant had received compensation for from said county court and this record was checked against the shipments received by the defendant. The state's evidence tended to show that the defendant during this entire transaction handled only Universal Portland Cement. The records of this company showed that it had shipped 19,307 barrels of cement to the defendant. The records of the county court showed that 19,371 barrels of cement were purchased and paid for by the county court. The state introduced evidence to show that numerous parties aside from the Marietta Manufacturing Company purchased from the defendant 137 barrels of cement, and that the said Marietta Manufacturing Company alone purchased 2480 barrels, for which it paid the defendant $6,528.77. The state put further evidence in the record tending to show that the county court used but 15,820 barrels of cement. In April, 1922, the county court of Mason county caused to be served on the defendant the following notice: "You are respectfully hereby notified to account for and pay over at once to the County Court of Mason County any and all property now in your hands belonging to the said County Court of Mason County. You are further hereby notified to account for and pay over to the said County Court of Mason County at once the proceeds arising from the sale of any and all property belonging to the said County Court of Mason County and sold by you while in your custody; and more especially are you notified to account for and pay over the proceeds arising from the sale of cement and sacks belonging to the said County Court of Mason County and especially the following sales are to be accounted for by you at once, inasmuch as the said cement sold was the property of the said County Court of Mason County: November 8, 1918, 173 barrels of cement.

sold to The Marietta Manufacturing Company; January 25, 1919, 21 sacks of cement sold to The Marietta Manufacturing Company; January 29, 1919, 23 sacks cement sold to the Marietta Manufacturing Company. You are further notified to account for and pay over the proceeds arising from the following additional sales made by you to the said Marietta Manufacturing Company, the said cement being the property of the County Court of Mason County: Feb. 1, 1919, 30 bags; Feb. 24, 1919, 22 bags; Feb. 24, 1919, 231 barrels; Feb. 3, 1919, 44 bags; Feb. 4, 1919, 56 bags; Feb. 10, 1919, 36 bags; October 3, 1919, 236 barrels; November 5, 1919, 300 barrels; December 5, 1919, 60 bags; December 5, 1919, 60 bags; December 11, 1919, 120 bags; January 31, 1920, 35 bags; February 2, 1920, 20 bags; February 3, 1920, 12 bags; February 10, 1920, 30 bags; February 11, 1920, 130 bags; January 10, 1920, 614 bags; March 2, 1920, 380 bags; March 10, 1920, 20 bags; March 11, 1920, 60 bags; March 12, 1920, 60 bags; March 15, 1920, 924 bags; March 19, 1920, 924 bags; July 26, 1920, 100 barrels; May 18, 1921, 20 bags.'' The evidence shows that no restoration or accounting was made by the defendant as a result of this notice. The indictment, on which the defendant was tried and convicted, was based upon sales of cement to the Marietta Manufacturing Company, extending over a period of about six months in the year 1920. Instead of making one count setting forth each of the ten transactions over this period of time, an indictment in twenty counts was returned, each one of the ten sales being made the basis of both a count in larceny and a count in embezzlement. The same witnesses, the same evidence, were alike applicable to each one of the sales and a general verdict of guilty was returned by the jury. The defendant offered three witnesses in his defense in which he sought to show that more cement was used in the construction of the bridges and road work in the county than had appeared in proof on behalf of the state. The defendant did not testify.

In the brief of counsel for defendant there are ten assignments of error. Each will be considered and disposed of in their order.

The first goes to the validity of the jury. G. C. Dabney, on his *voir dire* stated that he was a cousin of I. S. Dabney, who was a member of the county court at the time it was alleged the defendant embezzled its property, and Wade Jividen, also stated on his *voir dire*, that he was a son of William Jividen, who was also a member of the court at the time of the alleged embezzlement. The court required them to stand aside, stating that his action was taken, by reason of the fact that they might have been embarrassed in sitting in the case by reason of the relationship shown. In *State* v. *McCausland*, 82 W. Va. 532, the court said: "The rigid rule at one time in force as to the right of the accused in this regard is no longer the law in this state. The trial court has some discretion, and while the juror may be, strictly speaking, free from exception, still if he sustains such relations to one of the parties as would indicate that he might be in some manner affected or embarrassed thereby, the action of the court below in rejecting him will not be cause for reversal." It is better in the trial of all cases to have the jurors that are free from any embarrassing relations to either of the parties. In the exercise of its discretion the trial court cannot arbitrarily reject jurors, and in that way secure the particular men, who he desires to try the case; but where the rejection is based upon a substantial reason, as in this case, we see no good grounds for exception thereto. We see no error in this action of the court. Exception is also taken to juror J. W. Riffle being allowed to remain on the panel. He stated on his *voir dire* that he had heard a good deal of talk about the matter, and might feel a little embarrassed, but on being asked if he had made up or expressed an opinion with reference to the guilt or innocense of the defendant, he replied: "Well, I couldn't really say I have, because I don't know what the evidence is." The Court: "Are you sensible of any prejudice or bias existing for or against him that would prevent you from hearing the evidence and deciding the case upon the law and the evidence as given in this case?" Mr. Riffle: "I don't think so." The court thereupon permitted him to enter the panel. Whereupon counsel for defendant propounded to said juror the following question: "Mr.

Riffle, from what you have heard of this case with reference to the guilt or innocence of Mr. Larue, has it made such an impression on your mind that it would require evidence to remove that impression, whether of his guilt or his innocence?'' Answer: ''It would.'' The examination of the said juror continues, as follows: ''Mr. Musgrave: You say it would? A. I think so. Mr. Musgrave: We ask that this juror stand aside. He said it would take evidence to remove the impression he has had. Court: I don't know what he means by that. Mr. Riffle: Well, from what I have heard, it would take some evidence to remove the doubt as to whether he is not guilty or not, is what I mean or am trying to express. Court: You have heard it talked about in such a way that you have really made up your mind as to certain parts of it; is that the meaning of it? A. Yes, sir. Mr. Polling: Mr. Riffle, have you ever heard the evidence in this case or any of the former cases? A. No, sir, I never listened to the evidence. That is just the general talk. Q. Just the general talk? A. Yes, sir. Q. You really don't know, Mr. Riffle, whether that is the real evidence in the case? A. No, sir. Q. Or whether it is just gossip? A. No, sir. Mr. Summerville: That would be immaterial, Your Honor. Mr. Musgrave: If the state wants to take the chances on his staying on, all right. Mr. Hogg (Prosecuting Attorney): I want to ask him just one question, then we will take the chance on him. Mr. Riffle, I believe you stated that you are not sensible of any bias or prejudice of such nature as to prevent you from receiving both the evidence of the state and the evidence for the defendant and rendering a true and impartial verdict? A. I don't feel that way; no, sir. Mr. Hogg: I think that answers the question. Mr. Musgrave: We now formally ask the court to excuse this juror, and the motion I presume will be overruled. Court: Your presumption is entirely correct.'' We have thus set out the entire statement of the juror on his *voir dire.* The courts have not succeeded in establishing any judicial test by which the question of the competency of a juror can be determined. No fixed and invariable rule can be laid down. *Robinson* v. *Commonwealth*, 104 Va. 888. The trend of recent decisions is in the direction of limiting, rather than extending,

the disqualification of jurors by mere opinion. To have the effect of disqualifying a venireman, his opinion must be substantial, and not a mere impression which will not interfere with his fairness. His opinion must have been deliberate and decided in order to disqualify him. *State* v. *Moneypenney*, 81 W. Va. 362. Where the juror has previously expressed a decided opinion but swears that he has no bias and can decide according to the evidence, it was held he was competent. *State* v. *Lutz*, 85 W. Va. 330; *State* v. *Toney*, 98 W. Va. 236. So much depends upon the manner of the juror and his tone of voice and the opportunity of the trial judge to see and know the juror that it is the settled practice to not interfere with his findings unless clearly against the evdence. *Wormeley* v. *Commonwealth*, 10 Grat. 658. The appearance of the juror, his bearing, and manner, are often of great consequence in interpreting his answers, and for that reason in any doubtful case the decision of the trial court as to his eligibility must control. *State* v. *Stewart*, 85 Kan. 404. The question presented as to his qualification was one of mixed law and fact. The finding of the trial court upon that issue ought not to be set aside unless the error is manifest. *Reynolds* v. *U. S.*, 98 U. S. 145, 25 L. Ed. 245. The examination as a whole of juror Riffle only revealed the ordinary hesitancy to act of an honest and conscientious man when called upon to sit in judgment in a case which involved the liberty of a fellowman. We cannot say that the court erred in admitting him to the panel.

The next three assignments of error relate to the court's refusal to quash the indictment; to require the state to elect on which count it would proceed to trial, and, at the conclusion of its evidence, to elect on which count it would rely for conviction. The questions arising under these assignments are so closely allied that they may be appropriately considered together. Embezzlement is purely a statutory offense. It did not exist at common law. 20 C. J. 408. The only safe guide in determining what constitutes the crime of embezzlement, and what persons are amenable to the charge, is to be found in our code and statutes, already cited, and in the adjudications thereupon. The principles of the common law not being found adequate to protect general owners against the fraudu-

lent conversion of property by persons standing in certain fiduciary relations to those who were the subject of their peculations, our statute was enacted creating this offense and annexing to it a proper punishment. Under our statute, referred to, it is necessary to show, first, the trust relation of the person charged, and that he falls within the class of persons named; second, that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; third, that it is the property of another person or corporation; fourth, that it came into the possession, or was placed in the care, of the accused under and by virtue of his office, place or employment; fifth, that his manner of dealing with or disposing of, the property, constituted a conversion and appropriation of the same to his own use; and, sixth, that the embezzlement or fraudulent conversion of the property to his own use was with the intent to deprive the owner of his property. The Legislature did not stop at defining the offense, but prescribed a form of an indictment for embezzlement. Each of the counts in the indictment in the case at bar conforms to the requirements of the statute in this respect. The defendant complains of the joinder of these counts. The joinder as separate counts in one indictment, of several offenses, which, though distinct in point of law, yet spring out of substantially the same transaction, cannot operate to the legal prejudice of the accused; and he is not entitled as a matter of right to have the indictment quashed for this reason. *VanSickle* v. *People,* 29 Mich. 61. If the counts in fact relate to the same transaction, the indictment will not be quashed. 31 C. J. 781. "If all of the offenses charged in one or more counts of an indictment represent but one continuous transaction it is well settled in this state and in Virginia that they may be so joined as distinct offenses in different counts, and that where properly joined as distinct offenses, and unless they appear on the face of the indictment to involve a different transaction, a motion to quash for misjoinder should be overruled." *State* v. *Ringer,* 84 W. Va. 546; *State* v. *Smith,* 24 W. Va. 814; *State* v. *Shores,* 31 W. Va. 491; *State* v. *McClung,* 35 W. Va. 280; *Dowdy* v. *Commonwealth,* 9 Grat. 728. It is conceded that, where a

crime is a statutory one the indictment must set forth with clearness and certainty every essential element of which it is composed. It must portray the facts which the pleader claims constitutes the alleged transgression so distinctly as to advise the accused of the charge which he has to meet, and to give him a fair opportunity to prepare his defense, so particularly as to enable him to avail himself of a conviction or an acquittal in defense of another prosecution for the same offense, and so clearly that the court may be able to determine whether or not the facts there stated are sufficient to support a conviction. *Ledbetter* v. *U. S.*, 170 U. S. 606; *U. S.* v. *Cruikshank*, 92 U. S. 542. The indictment in the instant case gives a description of specific property, claimed to have been embezzled, the date of the embezzlement, and the value thereof. Here were averments of fact sufficient to clearly advise the defendant of the offense with which he was charged, to give him ample opportunity to prepare his defense, to enable him to avail himself of a conviction or an acquittal in the case of another prosecution for the same alleged crime, and to qualify the court to determine whether the facts constituted an offense. The motion to quash was properly overruled.

Ordinarily, no doubt, the discretion of the trial court in compelling, or refusing to compel, the state to elect upon which of two or more counts of an indictment it will proceed to try the defendant, is not reviewable on error. Bishop's Crim. Proc. 454; *Commonwealth* v. *Sullivan*, 104 Mass. 552; *McGregor* v. *U. S.*, 134 Fed. 187. The cases in which this rule has been announced are quite numerous. In most, if not all of them, however, no substantial prejudice to the merits of either the prosecution or the defense is found to have resulted from the action of the court, and therefore they cannot be regarded as controlling in cases where substantial prejudice has followed from the ruling. The discretion of the trial court in this respect, as in most other instances of its exercise, should be deemed judicial, and not arbitrary. The authorities are quite uniform in maintaining the right of the prosecutor, where offenses arose from the same transaction, to include a number of counts in one indictment

variously framed to meet the possible contingencies that may arise in the introduction of the evidence. Upon this subject the following pertinent language is used by Wharton: "Every cautious pleader will insert as many counts as will be necessary to provide for every possible contingency in the evidence, and this the law permits." See *Beasley* v. *People,* 89 Ill. 571; *Commonwealth* v. *Andrews,* 132 Mass. 263; *State* v. *Flye,* 26 Mc. 312; *State* v. *Smith,* 24 W. Va. 814. In the case now under consideration the offenses charged in the indictment grew out of one continuous transaction, and, upon whichever of the counts the prosecution should proceed, evidence of the entire transaction would be admissible. The defendant as the agent of the county court, had received from time to time, cement to be used by the county court in public improvements, or if not used in such public improvements, then he was to account to it in the goods themselves. Whether he sold such goods, and appropriated the money received therefor to his own use, and whether there was in law an embezzlement of any of the goods placed under his care or management, by virtue of his employment as such agent of the county court, would necessarily entail an examination covering the tenure of his relationship as such agent with the county court. Therefore, if the prosecuting attorney should be compelled to elect prematurely justice might be defeated by his inability to forecast the evidence. We think the state, under such circumstances, may of right, insert in the indictment more than one count, in order to meet the possible varying phases of the evidence; and a right to insert separate counts implies a right to support them by testimony, for without the latter right the former would be of no value.

It is insisted the evidence shows an accumulation of offenses, and for that reason it was error in the court to deny defendant's motion to compel the prosecution to elect at the conclusion of the state's testimony, upon what alleged act of larceny or embezzlement a conviction would be asked. In *Willis* v. *State* (Ala.), 33 So. 226, it was held that on an indictment for embezzlement, there is no error in the court refusing to compel the prosecution to elect upon what alleged act of embezzlement a conviction will be asked, as embezzle-

ment may, and often does, consist of many acts done in a series of years by virtue of the confidential relations existing between the employer and the employee. The court in the instant case, by its ruling, submitted all the evidence touching the alleged embezzlement of the property, by defendant, to the jury, and it is not perceived how it could have done otherwise. Embezzlement may, and most often does, as we have already said, consist of many acts done while the fiduciary relation existed between employer and employee. The fact at last disclosed that the employer's property has been embezzled is the crime against which the statute is leveled. In such case, should the prosecution be compelled to elect it would claim a conviction for only one of the many acts of the series that constitute the corpus delecti, it would be doubtful if a conviction could ever be obtained. The body of the crime consists of many acts done by virtue of the confidential relation existing between the parties. The separate acts may not be susceptible of direct proof, but the aggregate result is, and that is embezzlement. As we view it then, the court acted within its proper limits in permitting all the evidence of what defendant did by reason of his confidential relation with the county court, as an agent thereof, to go to the jury, and if the jury found, from the whole evidence, the property of the county court had been fraudulently converted to his own use by defendant, it was sufficient to maintain the charge of embezzlement as that crime is defined in section nineteen, chapter one hundred forty-five, Code. To arbitrarily accord to defendant the right of such election would leave opportunity for escape from just punishment of persons charged with violating this statute, on mere technical objections not affecting the guilt or innocence of the party accused. There was no error therefore in the court refusing to require the prosecution to elect for what particular act of embezzlement it would seek a conviction.

The sixth assignment of error goes to the competency of the testimony of certain employees of the Universal Portland Cement Company, all located near Pittsburgh, Pa., namely, S. L. Dodson, chief clerk, order department; F. A. Brine, divisional sales manager; and A. L. Rossiter, manager of the

traffic and sack department; and G. B. Brown, agent for the
Union Railroad at Universal, Pa. By these witnesses the state
sought to show the amount of cement shipped to the defendant
by the Universal Portland Cement Company during the time
that the transactions involved in the prosecution took place.
The objection of the defendant was confined (1) to the fact
that the witnesses did not testify from personal knowledge of
the transactions testified to by them but from the entries of
the books of record in the office of the company; (2) that such
entries must be supported by the suppletory oath of the party
who made the entries. Dodson, Brown, Brine and Rossiter
testified from primary records made in the regular course of
business of their respective companies and from books of
original entry in the departments over which each had super-
vision and control. But counsel for defendant maintains that
said witnesses while they testified from entries made in the
regular course of business they had no personal knowledge of
the transactions recorded on said books. Will the state be
compelled to go behind the books of original entry, thus
verified, and resort to each of the subordinate employees who
participated in the transaction and sale of the cement to the
defendant? Mr. Wigmore in his work on Evidence (1st Ed.),
sec. 1530, answers this question in the following words: ''Now
the ordinary conditions of mercantile and industrial life in
some offices do in fact constantly present just such a case of
practical impossibility. Suppose an offer of books represent-
ing transactions during several months in a large establish-
ment. In the first place, the employees have in many cases
changed and the former ones cannot be found; in the next
place, it cannot always be ascertained accurately which em-
ployee was concerned in each one of the transactions repre-
sented by the hundreds of entries; in the third place, even if
they could be ascertained, the production of the scores of
employees, to attend court and identify in tedious succession
the detailed items of transactions would interrupt and derange
the work of the establishment, and the evidence would be
obtained at a cost practically prohibitory; and finally, the
memory of such persons, when summoned, would usually
afford little real aid. If unavailability or impossibility is the

general principle that controls, is not this a real case of un-
availability?   Having regard to the fact of mercantile and
industrial life, it cannot be doubted that it is.   In such a case,
it should be sufficient if the books were verified on the stand
by a supervising officer who knew them to be the books of
regular entries kept in that establishment; thus the production
on the stand of a regiment of bookkeepers, salesmen, shipping
clerks, teamsters, foremen, or other subordinate employees,
should be dispensed with.''   No doubt much should be left to
the discretion of the trial court; production may be required
for cross examination, where the nature of the controversy
seems to require it.   It is contended, however, that the state
should have gone further, and shown by the parties who made
the entries that they were correct.   In most instances each of
the four said witnesses did not make the entries, but verified
the books as being those of original entry kept in the depart-
ment over which each had supervisory control.   Is this suffi-
cient?   It has been held that where it becomes material either
for or against a corporation, and as against a stranger or as
.between two strangers, (as in this case) to prove what .was
done by a corporation, its books and records are admissible
in evidence as the best evidence.   6 Thompson Corp., sec. 7734.
The best considered case in this state, nearest in point, is that
of *Architects & Builders* v. *Stewart,* 68 W. Va. 506.   In that
case Judge MILLER, after reviewing the authorities, held that
books of original entry of a contractor kept by .a bookkeeper,
who, according to an established system or method of trans-
acting the business, records the oral or written report made
to him by one or more persons in the regular course of busi-
ness, of transactions lying in the personal knowledge of the
latter, whether such bookkeeper have personal knowledge of
such transactions or not, are admissible in evidence, in con-
nection with the testimony of such bookkeeper showing the
regularity of the entries therein by him, to prove an account
therein, without the evidence of the witnesses having personal
knowledge of the transactions, provided the testimony of such
witnesses, because of death, interest, incompetency, absence,
inconvenience, or otherwise be unavailing.   In that case, it
will be seen, the bookkeeper who made the entry testified at

the trial. This, however, does not meet the question to be determined here. The State cites *Hardy's Case,* 110 Va. 910, where the treasurer of the Ithaca Gun Company was permitted, in the absence of the bookkeeper, to testify that the sales book, showing shipments of guns during a certain period, was in fact one of the books regularly kept by said company and used for the purpose of making just such entries and records as appeared therein. These entries were admitted in evidence as tending to prove that one of the guns (bearing a certain serial number), included therein, was afterwards owned by the accused and was in his possession shortly before the murder. The strictness of the original rule, relating to the proof necessary to authorize the introduction of such books of corporations, or summaries therefrom, used in the regular course of business, has been relaxed, largely because of mercantile necessity and business convenience. The Supreme Court of Virginia, in *French* v. *Virginian Ry.-Co.,* 121 Va. 383, held that where an entry is made by one person in the regular course of business, recording an oral or written report, made to him by one or more other persons in the regular course of business, of a transaction lying in the personal knowledge of the latter, there is no objection to receiving that entry under the exception to the hearsay rule of books of original entry, provided the practical inconvenience of producing on the stand the numerous persons thus concerned would in a particular case outweigh the probable utility of doing so. In that case to show the passage of a train, the train sheet made up by the train-dispatchers from station agents, was admitted though verified only at the trial by the claim adjuster, not the train dispatcher. The rule announced there was followed in the later Virginia case of *White Machine Co.* v. *Gilmore Furniture Co.,* 128 Va. 630. In this case the president and general manager of the furniture company testified that he had the books of original entry in the court room, and was permitted to introduce certain leaves of the loose-leaf ledger of that company. These leaves purported to show all the receipts and expenditures in connection with this transaction, involving many items and a period of several years. The Witness stated that the actual entries were made by a number of book-

keepers. He named two, both of whom lived in that state, and one was within the immediate jurisdiction of the trial court. The insistence there, as here, was that these bookkeepers should have been introduced. The court held that the regular books of a corporation, containing the financial record of its business with the entries made contemporaneously with the transaction referred to, are admissible when they come from the proper custody, and are identified by a supervising officer of the corporation, although the actual entries were made by a number of bookkeepers. In the recent case of *U. S.* v. *Robilio,* 291 Fed. 975, copies of records of certain telephone calls, claimed to have been made by the defendants at various times during the alleged conspiracy to violate the Reed Amendment by transporting liquor from a town in Missouri to a city in Tennessee, were admitted in evidence. The copies were made by the witness from the original records which took the form of toll tickets exhibited to him by the telephone manager. The telephone manager testified that the records were correct and were made under his supervision. Held, records made in due course of daily business in a quasi-public office are not rendered incompetent because original tickets were actually filled out by the operator and not by the witness. In the case of *Continental Bank* v. *First National Bank,* 108 Tenn. 374, the court said: ''We think it not necessary that the bookkeeper who made the entries should be examined as to their correctness. At most, he could only testify that the entries made by him are true entries of transactions reported to him by others. In other words he could only testify that he wrote down what others told him. The court knows, as a matter of common information, that there are many persons in the employ of banks, and each has his different department, and each transaction passes through the hands of several—it may be, of many—persons. We take a deposit, for instance. It goes into the hands of the receiving teller, thence into the hands of a journal clerk, thence to the individual bookkeeper, or such other officials as perform the functions of these officers. When it reaches the hand of the bookkeeper, he makes the final entry, which stands as a true statement as between the bank and the depositor, it has gone though the hands of a dozen parties

perhaps; and the last party only records what comes to him through so many hands, and knows nothing, it may be, of the actual transaction. It would seem that the cashier, whose function is to overlook all transactions at the counter and over the books, and test each transaction through all its stages, should be the person most competent to produce the books and vouch for their accuracy.'' By analogy the rule laid down in the cases cited would apply here. Why should not this rule be accepted? In each case the controlling question to be determined by the trial court is whether the record is genuine. Here it was shown that the books, from which the entires were sought to be introduced in evidence, were the regular books of the corporation, or department thereof, over which the witness vouching their authenticity had supervision and control; that they contained the financial record of the corporation or department, and that the entries were made contemporaneously with the transactions referred to; and that they came from the proper custody. Thus it is seen that there was every substantial guarantee of their genuineness. The truth of such entries as these are accepted and acted upon daily in the commercial world. The court properly admitted this evidence.

The seventh assignment of error relates to the proffered testimony of two commissioners of the county court and the county clerk, who were in office during the time embraced by the transactions charged in the indictment, but who were not in office at the time of the trial. This testimony was rejected. No record of the court was proffered. The county court is a corporation created by statute, and can do only such things as are authorized by law and in the mode prescribed. The commissioners must act as a corporate body, a quorum being present, and at the court house—the place fixed by law. *Goshorn* v. *County Court,* 42 W. Va. 735; *Barbor* v. *County Court,* 85 W. Va. 359. Two record books for the use of the court shall be kept, and in one of which shall be entered all proceedings of the court in relation to contested elections, etc., * * * and in the other of said books shall be entered all the other proceedings of the court. Code, chapter thirty-nine, section forty-six. The proffered evidence is clearly insufficient

to make a sale of the cement to Larue.   There was no price
fixed, no quantity named, and nothing to identify the cement
mentioned as being the identical cement upon which the
charges of embezzlement were predicated.   It does not appear
whether the conversation concerning the cement was at a
special or regular term of the court, nor whether the alleged
agreement was recorded.   If at a special session, the validity
of such session, must be vouched by the record, or everything
done by the court thereat is a nullity.   *Kirtley* v. *County Court*,
69 W. Va. 327.   Even assuming that the members of the court
could have made a sale of the cement without the entry thereof
being made on the record—which we do not admit—the prof-
fered testimony at most made the defendant an agent for the
court to sell certain cement and to collect and in turn to
account for the proceeds derived from said sales of cement
to third parties.   According to the evidence a later county
court made a proper demand on the defendant for an account-
ing thereof and under his failure to make such accounting,
he is, under the statute, presumed to be guilty of embezzle-
ment.   Code, chapter one hundred forty-five, section nineteen.
The defendant does not testify.   The instructions requested by
counsel for defendant, and which were refused, show that this
proffered testimony was interpreted by them as tending to
show not a sale, but the consent of the county court to the sale
of said cement by defendant to third parties.   It need not be
alleged that the misappropriation was without the consent of
the owner, to convict the defendant, unless the statute provides
that the conversion must have been without the consent of the
owner.   20 C. J. 474; *Alderman* v. *State*, 57 Ga. 367; *People*
v. *Dettmering*, 278 Ill. 580; *State* v. *Foster*, 11 Iowa 291;
*State* v. *Hayes*, 59 Kan. 61; *State* v. *Longworth*, 41 Texas, 162.
Under our statute an averment negativing the consent of the
owner is not required to constitute the crime of embezzlement.
Hence no proof to that effect is necessary to support a convic-
tion.   Under our interpretation of the effect of the proffered
testimony the ruling of the court in regard thereto is not
error.   Another exception of the defendant is to the refusal
of the court to permit the case to be reopened on the morning
following the conclusion of the trial, and before instructions

and argument were made, and to allow defendant to place the clerk of the county court on the stand to show that there was no order entered of record showing the sale of cement by the county court to the defendant. The conduct of the trial must necessarily be left largely to the discretion of the presiding judge—a discretion which cannot, in its very nature, be made a subject of review by this Court, except in a clear case of abuse of that discretion. *State* v. *Shawn,* 40 W. Va. 1. Nor does it appear that this defendant was in any manner injured or affected by its exercise in this particular instance. On the contrary the evidence sought to be introduced would have been of no benefit to him in the state of the record.

The eighth and ninth assignments relate to the instructions. Instructions Nos. 1, 2, 3 and 4, given on behalf of the state, define embezzlement in its varying phases and we perceive no error in them. Instruction No. 5 defines agent within the meaning of the law punishing one for the crime of embezzlement. The objection made to this is that it is merely an abstract proposition of law. This is true if read alone. But it should be read in connection with the other instructions. *Buckhannon Ry. Co.* v. *Coal Co.,* 75 W. Va. 423. An instruction stating the law in the abstract and another applying the legal stated proposition to the facts in issue may be treated as a single instruction. *Showalter* v. *Chambers,* 77 W. Va. 720. Instruction No. 7, in effect tells the jury that if they believe from the evidence in the case beyond all reasonable doubt that the defendant had in his possession Universal Portland cement as the property of the county court of Mason County, and that he held the same in his possession as the agent of such court, and that he sold the said property or any part thereof to third parties and received the money therefor and that after the defendant's receipt of said money the said County Court made demand thereof by written notice served upon him, and the said defendant did not within thirty days after such demand was so made pay the money over to the county court, then he is presumed to be guilty of the offense of embezzlement. This instruction follows the language of the statute, and is not error. The objection to the 8th instruction urged is that it precludes a conviction for petit

larceny. Under the case made the defendant was either guilty
of the felony or not guilty. This instruction therefore could
not operate to his prejudice.

The defendant complains of the court's refusal to give his
Instruction No. 1. This instruction told the jury that the
term "felonious" used in the indictment in this case is defined
as showing a "criminal intent," or "a malignant, malicious
or villainous act." This was properly refused. The only
criminal intent requisite to a conviction of an offense, created
by statute, which is not *malum in se*, is the purpose to do the
act in violation of the statute. No moral turpitude or wicked
intent is essential to such a crime. *Armour* v. *U. S.*, 153 Fed.
5; 1 Bishop Cr. L., (8th Ed.), Sec. 343. Defendant's instruc-
tions Nos. 5, 6, 7, 8, 9 and 10, were based on the theory that
the county court had re-sold the cement to the defendant, or
that it had consented to the sale thereof by the defendant to
third parties. As there was nothing in the record to support
either of these claims, they were properly rejected.

The last assignment of error is, the verdict is without evi-
dence and against the law. Ordinarily, whether there is
evidence to warrant a conviction, is a question for the jury,
the court taking care always to see that no manifest injustice
is done. With that view the evidence has been considered. It
would answer no good purpose to enter upon an analysis of
the evidence. It is sufficient to state the conclusion reached.
The evidence of the state, uncontradicted by the defendant,
seems ample to support the verdict of the jury.

*Affirmed.*