# CHARLESTON.

STATE *v.* L. N. FRANTZ

(No. 6627)

Submitted February 18, 1930. Decided February 25, 1930. (Rehearing denied March 27, 1930).

640

*O. J. Deegan, Connor Hall, J. S. Marcum* and *Russell S. Ritz*, for plaintiff in error.

*Howard B. Lee*, Attorney General, and *R. A. Blessing*, Assistant Attorney General, for the State.

LITZ, JUDGE:

The defendant, L. N. Frantz, was tried, convicted and sentenced to the penitentiary for ten years under an indictment charging him with the embezzlement and larceny of "certain money and currency of the United States of America of the value of" twenty-eight hundred dollars, belonging to the American Bank & Trust Company of Huntington, West Virginia, in which he was a large stockholder.

The overdrawing by the defendant of his personal account as depositor in the bank while president thereof in the active control of its affairs is the basis of the accusation. The commissioner of banking closed the bank on April 15, 1927, for insufficiency of legal reserve, and thereafter administered its assets. The account of the defendant from March 28th to April 14th, inclusive, according to the records of the bank, follows: March 28, 1927, $46.28 overdrawn; March 30, 1927, $107.82 overdrawn; March 31, 1927, $92.72 balance; March 31, 1927, $109.61 overdrawn; April 1, 1927, $246.81 overdrawn, April 1st, $282.81 overdrawn; April 4th, $332.81 overdrawn; April 5th, $687.82 overdrawn; April 5th, $2,887.82 overdrawn; April 6th, $2,966.92 overdrawn; April 6th, $3,066.92 overdrawn; April 7, 1927, $3,105.67 overdrawn; April 8th, $3,141.67 overdrawn; April 9, 1927, $3,166.67 overdrawn; April 12, 1927, $3,213.17 overdrawn; April 13th, $3,224.77 overdrawn; April 14th, $3,274.77 overdrawn; April 14th, $474.77 overdrawn; April 14th, $274.77 overdrawn. A sheet from the original ledger of the bank, showing these items, was introduced by the state over the objection of the defendant. This record did not, however, show the true status of the account as the defendant had been maintaining a large fictitious credit by means of "kiting" checks. The actual total of the overdrafts on April 14, 1927, as later developed, amounted to $8,047.37. Such unauthorized credit

in favor of defendant resulted from the issuance of checks by him on the American Bank & Trust Company payable to the Bank of Mullens, Mullens, West Virginia, in which he was also interested, and checks on the Bank of Mullens payable to the American Bank & Trust Company; the release of checks drawn on each bank being so timed as to offset checks drawn on the other. Both banks were closed by the commissioner of banking about the same time.

The defendant contends (1) that the ledger sheet was improperly admitted in evidence; (2) that the evidence does not establish fraudulent intent on his part in overdrawing his account; and (3) that the proof does not correspond with the charge in the indictment. The ledger sheet having been taken from the original records of the bank, was properly admitted in evidence. *State* v. *Larue*, 98 W. Va. 677, 128 S. E. 116.

The system employed by the defendant to obtain the funds of the bank, which had been entrusted to his care as active manager of its affairs, warranted the jury in finding that his acts were accompanied by fraudulent intent. The claim on his part that he used the money with an intention of repayment is not a sufficient answer to the adverse circumstantial evidence.

Under the third assignment of error, it is contended that the record does not show how the check or checks issued by the defendant on the American Bank & Trust Company in excess of his genuine credits were paid, and that in the absence of such evidence it is presumed that payment was made by crediting the account of the bank or banks presenting them for payment. It is further insisted, as a result of this argument, that proof of the embezzlement of credits will not support an indictment for embezzlement of money. *State* v. *Hudson*, 93 W. Va. 435, 117 S. E. 122, is cited as authority for the two propositions that, an indictment for embezzlement of moneys cannot be supported by proof of embezzlement of credits and that mere proof of payment of a check, without more, raises the presumption that the check was discharged by crediting the account of the bank presenting it for payment. The evidence in this case as to how the checks were paid is, however,

not left to presumption. The defendant testified that they were paid to the payees by a teller of the bank. Questions and answers on this matter from his testimony in chief, follow: "Q. Under what circumstances, Mr. Frantz, were these overdrafts made? A. By issuing various checks to pay various indebtedness; interest, curtailment on notes, accounts of one kind and another. Q. Made in the usual way, gave a check, payee would go and have the check cashed? A. Yes, sir. * * * Q. The checks were presented and paid to the cashier by some paying teller, not by you? A. Yes, sir.''

The point of error based upon an alleged improper remark of one of the jurors is not meritorious. After the verdict, the defendant presented, as ground for a new trial, the testimony of two witnesses who testified that the juror stated in their presence soon after the American Bank & Trust Company was closed by the banking commissioner that the defendant was a crook; that he was responsible for the wrecking of the bank and ought to be in the penitentiary for life. This charge was flatly denied by the juror who stated that he did not even know the defendant at that time.

The judgment of conviction is, therefore, affirmed.

*Affirmed.*