STATE OF WEST VIRGINIA

*v.*

CAROLYN GRIFFITH

(No. 14786)

Decided December 18, 1981.

---

*C. Blaine Myers*, for appellant.

*Chauncey H. Browning*, Attorney General, *and Robert S. Digges, Jr.*, Assistant Attorney General, for appellee.

HARSHBARGER, CHIEF JUSTICE:

Carolyn Griffith was convicted by a Wood County jury for violating W.Va. Code, 61-3-39, our Worthless Check Statute.[1] She challenges her felony conviction because the

---

[1] W.Va. Code, 61-3-39:

"It shall be unlawful for any person, firm or corporation to obtain any money, services, goods or other property or thing of value by means of a check, draft or order for the payment of money or its equivalent upon any bank or other depository, knowing at the time of the making, drawing, issuing, uttering or delivering of such check, draft or order that there is not sufficient funds on deposit in or credit with such bank or other depository with which to pay the same upon presentation. The making, drawing, issuing, uttering or delivery of any such check, draft or order, for or on behalf of any corporation, or its name, by any officer or agent of such corporation, shall subject such officer or agent to the penalties of this section to the same extent as though such check, draft or order was his own personal act, when such agent or officer knows that such corporation does not have sufficient funds on deposit in or credit with such bank or depository from which such check, draft or order can legally be paid upon presentment.

"This section shall not apply to any such check, draft or order when the payee or holder knows or has been expressly notified prior to the acceptance of same or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid, nor shall this section apply to any postdated check, draft or order.

"No prosecution shall be confined to the provisions of this section by virtue of the fact that worthless checks, drafts or orders may be employed in the commission of some other criminal act.

trial court admitted evidence over her objection of a ledger showing transactions on her bank account, refused to give two of her proffered instructions and because the statute is unconstitutional.

On January 12, 1978, Ms. Griffith received property from Radio Shack in exchange for a $262.45 check drawn on Peoples Banking and Trust Company of Marietta, Ohio. The check was returned to Radio Shack stamped "account closed". At trial a ledger of her account was admitted into evidence, revealing that her account was opened with a $253.26 deposit in September, 1977; that no other deposits were made; and that when she wrote Radio Shack's check her account had been closed because it was overdrawn by a substantial sum. The State introduced this evidence to prove defendant had knowledge that the check was worthless (an element of this felony is knowledge that there were insufficient funds to cover the check).

Defendant asserted that a ledger kept by a bank does not prove customer knowledge about its revelations unless there is evidence that account statements were received by the customer. Trial evidence showed that statements were mailed by the bank, but defendant denied receiving them. *See National Grange Mutual Insurance Company v. Wyoming County Insurance Agency, Inc.*, 156 W. Va. 521, 195 S.E.2d 151, 155 (1973) (wherein an insurance notice placed in the mail created a rebuttal presumption of receipt). Evidence that defendant received state-

---

"Any person who shall violate the provisions of this section, if the amount of the check, draft or order is less than two hundred dollars, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than two hundred dollars, or imprisoned not more than six months, or both fined and imprisoned. Any person who shall violate the provisions of this section, if the amount of the check, draft or order is two hundred dollars or more, shall be guilty of a felony, and, if convicted thereof, shall be fined not more than five hundred dollars, or imprisoned not less than one year nor more than five years, or both fined and imprisoned."

ments would enhance the State's proof, but the ledger is probative and admissible, Syllabus Point 1, *State v. Frantz,* 108 W. Va. 639, 152 S.E. 326, *cert. denied,* 281 U.S. 767, 50 S.Ct. 465, 74 L.Ed. 1174 (1930), although certainly not conclusive proof of knowledge. Defendant had an opportunity to persuade the jury that the ledger was not accurate, but had no such evidence.

The trial court's refusal to give Griffith's instructions 1[2] and 3[3] was not reversible error, because State's Instruction 1[4] listed all elements of the crime and proof required,

---

[2] Defendant's Instruction No. 1:

"It is an essential element of the offense and must be proved by the State of West Virginia beyond a reasonable doubt that the Defendant, CAROLYN GRIFFITH, at the time of the making and presenting of the check to Radio Shack knew that there were not sufficient funds on deposit at the bank to pay the check upon presentation.

"If you are not satisfied beyond a reasonable doubt that she knew at the time of the making and presenting of such check that there were not sufficient funs to cover payment of the same upon presentation, then you may not find her guilty, but must find her NOT GUILTY.

"/s/ Refused, A. N. Gustke,
Judge"

[3] Defendant's Instruction No. 3:

"The check which is the subject of this indictment payable to Radio Shack in the amount of $262.45 has been admitted into evidence by the Court. You should not and may not presume that because there were insufficient funds on deposit to pay said check upon presentation, that CAROLYN GRIFFITH knew of such lack of funds at the time she wrote the check. Such check alone is not sufficient proof of the knowledge of insufficient funds. The check must be considered with all the other evidence in the case in considering whether or not it has been proven beyond reasonable doubt that CAROLYN GRIFFITH knew that there were insufficient funds at the time of the making of such check.

"/s/ Refused, A. N. Gustke,
Judge"

[4] State's Instruction No. 1:

"The offense charged in the indictment in this case is obtaining · Property in Return for Worthless Check. One of two (2) verdicts may be returned by you under this indictment. They are (1) guilty of Obtaining Property in Return for Worthless Check; (2) not guilty.

"Obtaining Property in Return for Worthless Check is committed when any person, firm or corporation obtains any money, services,

including those factors set out in the refused instructions. "It is not error for a court to refuse to give a repetitive

---

goods, or other property or thing of value by means of a check, draft, or order for the payment of money or its equivalent upon any bank or other depository, knowing at the time of the making, drawing, issuing, uttering or delivering of such check, draft or order that there is not sufficient funds on deposit in or credit with such bank of other depository with which to pay the same upon presentation.

"The burden us [sic] on the State of West Virginia to prove the guilt of the Defendant beyond a reasonable doubt and the Defendant, CAROLYN GRIFFITH, is not required to prove herself innocent. She is presumed by the law to be innocent of the charge and this presumption remains with her throughout the entire trial.

"Before CAROLYN GRIFFITH, can be convicted of Obtaining Property in Return for Worthless Check, the State of West Virginia must overcome the presumption that she is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that:

"1. the defendant, CAROLYN GRIFFITH,

"2. in Wood County, West Virginia,

"3. on or about the 12th day of January, 1978,

"4. did obtain goods or property of value,

"5. from Eugene R. Fry, Jr.

"6. by means of a check, draft or order for payment of money in the amount of Two Hundred Sixty-two and 45/100 Dollars (262.45)

"7. drawn upon the Peoples Banking and Trust Company, Marietta, Ohio–Belpre Branch,

"8. and at the time of the making, drawing issuing and delivering of such check that there was not sufficient funds on deposit in or credit with such bank with which to pay the same upon presentation,

"9. and at the time of the making, drawing issuing and delivering of such check "Carolyn Griffith knew" that there was not sufficient funds on deposit in or credit with such bank with which to pay the same upon presentation,

"10. and further the said Eugene R. Fry, Jr. did not know and was not notified prior to the acceptance of the said check and had no reason to believe that the said CAROLYN GRIFFITH, did not have on deposit or to her credit with the bank aforesaid sufficient funds to insure payment of the check and the said check was not postdated.

"If after impartially considering, weighing and comparing all the evidence, both that of the State and that of the Defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of Obtaining Property in Return for Worthless Check, you may find CAROLYN GRIFFITH, guilty as charged in the indictment. If the jury and each

instruction." *State v. Demastus*, ___ W. Va. ___, 270 S.E.2d 649, 659 (1980).

Griffith's final argument challenged the constitutionality of our 1977 Worthless Check Statute because (1) it is a facade for debt collection, (2) defendant's criminality is dependent upon her bank's willingness to "cover" her worthless checks, (3). Code, 61-3-39a through 61-3-39g are unconstitutionally vague, and (4) Code, 61-3-39c and 61-3-39d create unconstitutional presumptions of guilt.

The statute was amended in 1977 by revising 61-3-39 and adding subsections 39a through 39g.[5] Code, 61-3-39 relates

---

member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of Obtaining Property in Return For Worthless Check, you shall find CAROLYN GRIFFITH not guilty.

> "/s/ Given, A. N. Gustke,
> Judge"

[5] W.Va. Code 61-3-39a:

"It shall be unlawful for any person, firm or corporation to make, draw, issue, utter or deliver any check, draft or order for the payment of money or its equivalent upon any bank or other depository, knowing or having reason to know there is not sufficient funds on deposit in or credit with such bank or other depository with which to pay the same upon presentation. The making, drawing, issuing, uttering or delivering of any such check, draft or order, for or on behalf of any corporation, or its name, by any officer or agent or such corporation, shall subject such officer or agent to the penalties of this section to the same extent as though such check, draft or order was his own personal act.

This section shall not apply to any such check, draft or order when the payee or holder knows or has been expressly notified prior to the acceptance of same or has reason to believe that the drawer did not have on deposit or to his credit with the drawee sufficient funds to insure payment as aforesaid, nor shall this section apply to any postdated check, draft or order. This section shall not apply when such insufficiency of funds or credit is caused by any adjustment to the drawer's account by the bank or other depository without notice to the drawer or is caused by the dishonoring of any check, draft or order deposited in the account unless there is knowledge or reason to believe that such check, draft or order would be so dishonored.

Any person who shall violate the provisions of this section shall be guilty of a misdemeanor, and, upon conviction thereof, shall be fined not more than one hundred dollars, or imprisoned not more than ten days, or both fined and imprisoned."

to the knowing issuance of a worthless check in order to obtain any money, services or things of value. It is akin to obtaining property or labor by false pretenses, a Code 61-3-24 crime, including similar provisions delineating felonies from misdemeanors based on the value of "property" taken. Code, 61-3-39a, a different crime, makes it a simple misdemeanor to issue a "worthless check" for a preexisting debt. Griffith was prosecuted for violating the felony provision of Code, 61-3-39. Any asserted statutory ambiguities in Code, 61-3-39a or in subsections about misdemeanor violations do not apply to her conviction. She concedes in her brief that Code, 61-3-39 alone is not vague or ambiguous (and we agree) and that the presumptions in Code, 61-3-39c and 39d were not applied to her.[6]

It is a well settled principle that courts do not generally pass on the constitutionality of challenged statutes unless that question is necessary to the decision of the case.
*State ex rel. Myers v. Wood,*
154 W. Va. 431, 175 S.E.2d 637, 642 (1971).

---

Code 61-3-39b:
"Payment of a dishonored check, draft or order shall not constitute a defense or ground for dismissal of charges brought under section thirty-nine [§61-3-39] of this article. Payment of a dishonored check, including any authorized charges or costs, shall constitute a defense or grounds for dismissal of charges brought under section thirty-nine-a [§61-3-39a] of this article."

Code, 61-3-39c explains duty of drawee and reason for dishonor.

Code, 61-3-39d involves *prima facie* evidence of knowledge, identity and a penalty for lying.

Code, 61-3-39e contains contents of a required notice of dishonor and permits a service charge.

Code, 61-3-39f reviews the form and filing of a complaint for a warrant.

Code, 61-3-39g permits dismissal of criminal misdemeanor charges upon payment of the check, warrant, notice, payment procedures and costs.

[6] These "presumptions" are *prima facie* evidence, not conclusive and not involving shifting of burdens of proof. *County Court of Ulster County, New York v. Allen,* 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *State ex rel. Farley v. Wharton,* ___ W. Va. ___, 267 S.E.2d 754 (1980).

Whether Code sections 61-3-39a through 39g are constitutional, Code, 61-3-39, which establishes the offense, can stand alone and suffers none of the constitutional infirmities alleged to invalidate subsequent sections. *See State v. Flinn,* 158 W. Va. 111, 208 S.E.2d 538 (1974); *State v. Heston,* 137 W. Va. 375, 71 S.E.2d 481 (1952).

Banks can choose to honor otherwise "worthless checks", and their doing so does not create due process or equal protection rights for check writers whose paper they choose *not* to cover. A bank's decision to pay a customer's "bad check" relates to whether a customer has established credit with his bank and not to the statute's constitutionality. The Code, 61-3-39, crime is knowingly issuing a check for something of value without sufficient funds or *credit* to pay the same. If one knows there are neither sufficient funds nor credit to cover his check, the crime is committed.

The debt collection device argument is also inapplicable. The statute does permit dismissal of misdemeanor criminal charge upon payment of the check, Code, 61-3-39g, but only when a misdemeanor is charged. Griffith was convicted and punished for a felony; the notice and payment procedures to which she now objects, were not applicable to her.[7] Code, 61-3-39b, clearly denies a felony defendant the right to have charges dismissed upon payment of his check.

*Affirmed.*

---

[7] The magistrate court's practice of mailing *Code* 61-3-39g notices to felony defendants is improper. It was harmless error because Griffith did not attempt to pay her check.