# CHARLESTON.

## STATE *v.* JOSEPH CANTOR.

Submitted February 20, 1923.     Decided February 27, 1923.

1. EMBEZZLEMENT—*Indictment for Embezzlement, Omitting Purpose for Which Moneys Intrusted and Employment of Accused, Fatally Defective.*

    An indictment for embezzlement which avers that defendant on a stated time and in the proper county, divers moneys, bank notes, etc. of certain value, the property of the prosecuting witness the same having been then and there intrusted to defendant to be redelivered to the prosecuting witness, did, before delivery thereof to prosecuting witness, then and there unlawfully and feloniously embezzle, and fraudulently convert to his own use and steal, is fatally defective by reason of omitting the purpose for which such moneys were intrusted, the trust relation of the accused, and the office, place or employment of the accused.   (p. 242).

2.  SAME—*Law Making Conversion of Property Before Deliv-
    ery Embezzlement Applies Only to One to Whom Such
    Property Intrusted to be Delivered to Another Person.*

    Sec. 20, chap. 145, Code, which provides: "If any carrier
    or other person to whom money or other property which
    may be the subject of larceny, may be delivered to be car-
    ried for hire, or any other person may be intrusted with
    such property, embezzle or fraudulently convert to his own
    use or secrete with intent to do so, any such property, either
    in mass or otherwise, before delivery thereof at the place
    at which, or to the person to whom, they were to be delivered,
    he shall be deemed guilty of larceny thereof," applies only
    to one to whom such property is intrusted to be carried and
    delivered to another person. (p. 242).

3.  SAME—INDICTMENT AND INFORMATION—*Essential Elements of
    Indictment for Embezzlement by a Person Intrusted With
    Delivery of Property Stated.*

    An indictment under sec. 19, chap. 145, Code, must aver
    the proper venue and time, that defendant did feloniously ·
    embezzle, convert to his own use and steal the kind of prop-
    erty embraced in the section, describing it, and stating its
    value; that the property is the property of another person,
    naming him; that defendant came into possession or care of
    such property by virtue of his office, place or employment
    which also must be stated; against the peace and dignity
    of the state. (p. 242).

4.  INDICTMENT AND INFORMATION—*General Motion to Quash In-
    dictment for Defects on Face Overruled if Containing One
    Good Count.*

    A general motion to quash an indictment for defects on
    its face, should be overruled if the indictment contains one
    good count. (p. 242).

5.  CRIMINAL LAW—*Evidence of Contemporaneous Embezzlement
    Arising Out of the Same Transaction for Which Accused
    Indicted Admissible Only to Show Intent, System, or
    Method of Accused; Failure to Confine Consideration of
    Evidence of Contemporaneous Embezzlement to Show In-
    tent, System or Method Not Erroneous, Where it Could Not
    be Applied for Any Other Purpose; Instruction That Evi-
    dence of Contemporaneous Embezzlement be Confined to
    Show Intent, System, or Method of Accused Should be
    Given if Requested.*

    As a general rule, where evidence is introduced tending
    to show a contemporaneous embezzlement by defendant,

arising out of the same transaction for which he is indicted, the court should instruct the jury to consider the evidence only for the purpose of showing intent, system or method of the accused, and not to consider it as evidence of another crime, and to carefully limit the evidence to the purposes for which it is admissible; yet, where the circumstances are such that the jury could not possibly apply the evidence to any other purpose than that for which it was admissible, failure to instruct will not be reversible error. But where such instruction is asked for by the prisoner, it should be given. (p. 245).

6.   EMBEZZLEMENT—*Admission of Evidence That Accused Subsequent to Alleged Embezzlement Sold Property in Due Course of Business Erroneous.*

Evidence that the accused, some time after the alleged embezzlement was consummated, sold a house and lot, the sale being regular and for value and in due course of business, is inadmissible, and if admitted constitutes reversible error. (p. 247).

7.   CRIMINAL LAW—*Abstract Instruction, Unconnected With Evidence Not Indicating Facts Making it Applicable, Should Not be Given.*

An instruction stating an abstract proposition of law, without in any way connecting it with the evidence, or indicating what facts the jury must find from the evidence in order to make it applicable, ought not to be given.

Error to Circuit Court, Marion County.

Joseph Cantor was convicted of embezzlement and larceny and he brings error.

*Reversed and remanded.*

*Musgrave & Brandon,* and *Robinson & Robinson,* for plaintiff in error.

*E. T. England,* Attorney General, *R. Dennis Steed,* Assistant Attorney General, and *John W. Mason, Jr.,* Assistant Prosecuting Attorney, for the State.

LIVELY, JUDGE:

Joseph Cantor was convicted in the criminal court on an indictment for embezzlement and larceny, and sentenced to six years confinement in the penitentiary; upon refusal

of the circuit court to grant a writ of error, he obtained and
now prosecutes this writ of error.

It appears that about September 27, 1921, Mat Niksich
was arraigned before a justice of the peace for a violation
of the prohibition law, and his hearing thereon was con-
tinued to a future date, about the 6th day of October fol-
lowing. Bond was required in the sum of $1,000 for his ap-
pearance, which was signed by the defendant, Joe Cantor.
On the same occasion George Oraskovich was arraigned be-
fore the same justice on a similar charge and his bond was
signed by Joe Cantor also. Tom Marich, a friend of Mat
Niksich, had $600 which he agreed to place with defendant
to be held by him until after the trial. George Oraskovich
also had a similar amount which he placed with defendant
under the same arrangement. The state's witnesses in sub-
stance say that the $600 so delivered to defendant was for
the purpose of indemnifying him for going on the bond
and was to be returned by him to the owner after the trial.
After the bonds had been signed at the court house, de-
fendant, in company with the others, all of whom were Croa-
tians and could not read or speak the English language,
went to the office of Cantor who operated a tailoring business
known as the Cantor Tailoring Company, where the money
was counted out and turned over to Cantor, who was also
a Croatian but could speak the English language and had
been acting in the capacity of interpreter in the courts. On
the day set for the trial, Mat Niksich and George Oraskovich
appeared, and the justice released them under instructions
from the prosecuting attorney. It appears that there was
no tangible evidence against them. After being released
they desired of Cantor the return of the money placed with
him, but he failed and refused to turn it back to them.
According to their testimony he stated that he could not then
return the money, but proffered to pay, at one time 6% and
at another 10% for its use, which the prosecuting witness
declined to accept. When the money was delivered to de-
fendant he gave a receipt therefor on a form used in the
business of the tailoring company and which was signed

"The Cantor Tailoring Company, by J. C." It is dated on the 27th of September, 1921, and reads: "Received of Tom Marich, on account, $600 for bond," followed by the signatures above. A similar receipt was given to George Oraskovich. As above stated, the evidence of these Croatians, supported by the evidence of other persons, was to the effect that the money was turned over to defendant to make him safe in going on the bond of Niksich for his appearance for trial in the justice's court. The defense is based upon the theory that the money was not turned over to defendant for that purpose, but was simply a loan. The defendant so states, and he is corroborated by his bookkeeper, Miss Musgrave, who witnessed the transaction in the office, and who testified that she heard enough of the conversation, although it was partly carried on in a foreign language, to substantiate defendant's claim of a loan; that she received and counted the money in the presence of the others and entered it as a loan upon the books of the tailoring company, and that the money was used by the tailoring company in the conduct of its business. The books of the tailoring company and the entries therein were introduced, which corroborated the testimony of the bookkeeper. Another witness, who claimed to have been present, and who was conducting a branch of the tailoring business at Elkins, testified that he heard enough of the conversation to impress upon him that the money was a loan.

After several efforts by Tom Marich and through his attorney to obtain the return of the money, suit was instituted and judgment obtained for the $600, against defendant. About that time a receiver was appointed for the tailoring company. In January following this indictment was found.

Defendant's motion to quash the indictment was overruled, and this is assigned as error. The indictment contains two counts, one for embezzlement, the other for larceny. Stripped of its unnecessary verbiage, the embezzlement count charges that Joseph Cantor, on the ........ day of October, 1921, divers moneys (describing same), the money and prop-

erty of Tom Marich, of the value of $600, the same having
been intrusted to Cantor to be re-delivered to Marich, did,
before the delivery thereof to Marich, then and there un-
lawfully and feloniously embezzle and fraudulently convert
to his own use, and steal. Is this a good count for embezzle-
ment? If it can be sustained at all, it must be under sec.
19 of chap. 145, Code. It cannot be sustained under sec.
20 of that chapter, because that section applies only to one
to whom property is intrusted to be carried and delivered to
another person. The crime of embezzlement was unknown to
the common law, and hence is purely statutory, and we must
look to our statute and to its provisions, strictly construed,
in order to determine whether the particular offense is prop-
erly charged. Sec. 19 reads: "If * * * any agent * * *
embezzle or fraudulently convert to his own use, bullion,
money * * * or any effects or property of any other person,
which shall have come into his possession, or been placed
under his care or management, by virtue of his office, place
or employment, he shall be guilty of larceny thereof." An
indictment under this section must charge that the defendant
feloniously embezzled, converted to his own use and stole the
kind of property embraced in the section, describing it, and
state its value; that the property is the property of another,
naming the person; that the defendant came into possession
or care of such propery by virtue of his office, place or
employment, which office, place or employment must also be
stated. It is apparent that this count does not meet these
requirements, and is fatally defective by reason of omitting
from the indictment the purpose for which such moneys
were intrusted, the trust relation of accused to Tom Marich,
and the office, place or employment of the accused. The count
simply says that the property of Tom Marich, of the value of
$600, had been intrusted to Cantor to be re-delivered to him,
Marich, and that before the delivery thereof, defendant
unlawfully and feloniously embezzled it, converted it to his
own use and stole it. What trust relation is shown by the
count? What was the place or employment of defendant
as shown by this count? The allegation that he was in-
trusted with the property of Marich is too loose and in-

definite. Whether the agency of defendant was that of a common carrier or that the money was to be kept or used or appropriated to any particular object or service, is not shown. The simple allegation that the property was delivered, to be re-delivered, falls far short of meeting the requirement of the statute. *Com. v. Smart*, 72 Mass. 15; Arch. Crim. Pl. (5th Am. Ed.) 41. The indictment must distinctly allege the existence of the trust relation, or set out the facts which establish such relation, otherwise the count will be insufficient to show that the crime charged has been committed. 2 Wharton's Crim. Law, sec. 1309; Whar. Crim. Pro. Vol. 1, sec. 586; citing numerous authorities. It is clear that this count is not good as charging the crime of embezzlement under section 19. But it is insisted that it may be sustained under section 20. As above suggested, that section applies only to one to whom property is intrusted to be carried and delivered to another person. Similar sections almost verbatim with ours have been so construed by various courts. *Com.* v. *Williams*, 3 Gray (69 Mass.) 461; *Territory* v. *Heacock*, 20 Pac. Repts. 171; *State* v. *Mims*, 2 N. W. 492; *State* v. *Grisham*, 2 S. W. (Mo.) 223.

The embezzling count is fatally defective. However, the second count is good as charging larceny, and as the motion to quash was general and for defects on the face of the indictment, it was properly overruled, because it contains one count which is good. *State* v. *Cartwright*, 20 W. Va. 33.

A count for larceny may be joined with a count for embezzlement. 2 Whar. Crim. Law, sec. 1294. It is argued by defendant's counsel that the larceny count is insufficient because it does not clearly state to whom the property belonged. We do not so read the count. Stripped of its abundant surplus verbiage it charges that Joseph Cantor, in the county of Marion, on a certain day, certain moneys, bank notes, etc., of the value of $600, the money and property of Tom Marich, he, the said Joseph Cantor, feloniously did steal, take and carry away.

The count for embezzlement being fatally defective, can the evidence of embezzlement be received to substantiate the count for common law larceny? Formerly a common law indictment for larceny was not sufficient. It could only be made so by statute. It appears that at one time the opinion was ventured at *nisi prius* in England to the effect that a common law indictment for larceny would be good in embezzlements by bailees, but this opinion was disregarded until in the time of Victoria when a law was passed which provided that in prosecutions of bailees who fraudulently converted bailed goods an indictment for larceny would be sufficient. Mr. Wharton says that where a statute to this effect is not in operation it is essential in all cases of embezzlement as distinguished from larceny that the distinguishing features, that is the defendant's fiduciary character, which divide embezzlement from larceny, must be specially detailed. 2 Whar. Crim. Law, sec. 1310. However, section 19, above referred to, makes an agent, who embezzles or fraudulently converts to his own use bullion, money or any effects or property of another person which shall come into his possession or been placed under his care or management by virtue of his place or office, guilty of the larceny thereof. While I have grave doubts as to the correctness of the holding, this court seems to be committed to the proposition that one under a common law indictment for larceny may be convicted of that offense by evidence showing that he embezzled the property alleged to have been stolen. *State* v. *Workman,* 91 W. Va. 771, 114 S. E. 276; *State* v. *DeBerry,* 75 W. Va. 632; "On an indictment for common law larceny, evidence of embezzlement, is admissible, and a conviction of that offense may be had." *Swick* v. *Bassell,* 77 W. Va. 78. *Contra,* see 20 C. J. p. 460, sec. 56.

Defendant's second point of error, relates to the introduction of a receipt given by him to Oraskovich for $600 at the same time and for a like purpose, for which the receipt was given to the prosecuting witness, Tom Marich. The point is made that the Oraskovich receipt related to a separate and distinct transaction had with another party,

and was no part of the offense for which the defendant was tried. The receipt was permissible as evidence on the theory that it would tend to show motive, system or fraudulent intent and not to be considered by the jury as evidence that another offense had been committed, and hence put the defendant on trial for two separate offenses. These receipts were given at the same time and arose out of the same transaction, and were permissible for the purpose indicated; but the objection thereto is that the court should have told the jury that they could only consider the receipt as evidence for that purpose. The defendant did not ask the court to instruct the jury in that regard, but now claims that it was the duty of the court to do so without being requested, and that because the court failed to so instruct the jury, it was prejudicial error. In many jurisdictions where evidence of another crime has been properly admitted, it being competent for some special purpose, and the court has neglected to instruct the jury that the evidence must be considered only for that special purpose, a verdict of guilty has been set aside. This is the rule uniformly followed in Texas, even when such instruction is not requested. *Hanly* v. *State*, 28 Tex. App. ·375, 13 S. W. 142. In other jurisdictions where such evidence has been admitted, the courts have not disturbed the verdict if the defendant fails to ask the court to properly instruct the jury. *Glover* v. *People*, 204 Ill. 170; *People* v. *Fultz*, 109 Cal. 258; *Reg.* v. *Chambers*, 3 Cox C. C. 92. However, it has been held that where the circumstances of the case are such that the jury could not be misled to apply the evidence to any other purpose than that for which it was properly admitted, the failure to instruct is not prejudicial. *Leaper* v. *State*, 29 Tex. App. 63; *Carroll* v. *State*, 58 S. W. 340; *Moseley* v. *State*, 37 S. W. 736; 38 S. W. 197. We think the circumstances are such in the case at bar that the jury could not have been misled as to the import of the evidence. There was nothing in the record to show or to intimate that defendant had embezzled the money for which the Oraskovich receipt was given, There was no evidence that the Oraskovich money had not been paid back.

Defendant's third assignment of error is that the court, over his objections, required him to answer questions relative to the disposition of a house and lot owned by him, subsequently to the alleged embezzlement, and relating to the ownership of an automobile registered in his wife's name, and his wife's ownership of the household goods at the time of the trial. Defendant was asked to whom he conveyed his real estate about the first of November, 1921, and over objection answered that he had conveyed it to Lewis Golden. Asked if Golden was any relation to his wife, he replied that he was not. He was then asked if he had an automobile, and he replied that he had several, once upon a time, but only one then, which was registered in the name of his wife. He was asked to whom the furniture in his residence belonged, and he replied that it belonged to his wife, and that she had bought it in her own name and paid for it. Objections were made to all of these questions and overruled. We fail to see the relevancy of these facts to the issue. If the embezzlement was committed as alleged in the indictment and testified to by the state's witnesses, the crime was complete when demand was made for the money and refused. The issue was the fraudulent conversion and embezzlement of the money with intent to deprive the owner thereof. The larceny having been committed the subsequent return of the money or its collection by forced process would not relieve defendant of the crime, then complete; and we do not see what bearing the subsequent sale of the house and lot would have on the offense already committed. Moreover, the simple fact of a sale of property would show no intent to steal. By innuendo it was sought to show that the vendee was some relative by marriage and that the sale was not made for a bona fide purpose. Observe that the price and terms do not appear. Perhaps the sale was beneficial, and was dictated by good business judgment. These matters were collateral to the issue, and to meet them would have been traveling afar. The trial was completed about January 18, 1922, and the then financial condition of the accused was gone into, and he was asked if he had any property at that time subject to levy. The impression

may have been made upon the jury by such evidence that the lack of funds to pay back the money was evidence of guilt. If he had abundant moneys at the time of the trial, would that have relieved him of guilt? An instruction of that kind would have been promptly and properly refused. We think defendant was prejudiced by this line of evidence. To what extent he was prejudiced is chimerical; but if substantial error be committed it is presumed to be the prejudice of the prisoner. *State* v. *Musgrave,* 43 W. Va. 672; *Ward* v. *Ward,* 47 W. Va. 766, 35 S. E. 873; *State* v. *Douglass,* 28 W. Va. 298. In *State* v. *Moyer,* 58 W. Va. 146, it was held that in a trial for embezzlement, evidence of the solvency of defendant at or immediately prior to the time of the alleged embezzlement is admissible. See *Bullock* v. *State,* 10 Ga. 55; *U. S.* v. *Camp,* 2 Idaho, 231. The embarrassing financial condition of the accused at the time of the commission of the alleged embezzlement may be shown by the State, tending in some degree to show motive for the crime, according to some decisions. *Bridges* v. *State,* 103 Ga. 34; 29 S. E. 859. See *Fulmer* v. *Com.,* 97 Pa. State 503. The evidence in the case at bar does not relate to the financial condition of defendant at the time of the offense, but relates to a subsequent period, several months afterwards. The bare fact that the house and lot was sold about November 1st, does not show a good or bad financial condition of defendant at that time. The wife's ownership of the automobile and household goods at the time of the trial in January was not pertinent to the issue. Inability of the prosecuting witness to collect his debt by legal process at the time of the trial would have no bearing upon the issue, but may have had a serious influence in bringing about the verdict.

Defendant's fourth assignment of error is that his instruction No. 3 was modified and given by the court, and that an important part thereof was stricken out. The instruction given as modified, sets out defendant's theory on which his whole evidence was based. It told the jury that if they believed the money was borrowed for the use and benefit of the Tailoring Company, and defendant gave

the company's receipt therefor, which was accepted by
Marich, then they should find defendant not guilty. The
part stricken out was: "and that if you further believe from
the evidence that said money so borrowed as aforesaid, was
deposited in the bank, for the use and benefit of the said
Cantor Tailoring Company, and that you further believe
from the evidence that the said Cantor Tailoring Company,
has, at all times, since said sum of money, aforesaid was
so borrowed, had custody and control of same; and that the
defendant, Joseph Cantor, did not have in his possession
said money, and did not make use of said money, for his
own personal use, then," (followed by) "you should find
defendant not guilty." We cannot see that this part so
stricken out adds much to the effect of the instruction given.
It was immaterial what use the Tailoring Company made of
the money, or where it was placed, if the jury believed it
was borrowed. On the other hand, if the money was not
borrowed as claimed by defendant, the fact that he turned
it over to the tailoring company which used and con-
trolled it exclusively, would not relieve him, if he was with-
out right to appropriate it. To appropriate to one's own
use, does not necessarily mean to one's personal use or ad-
vantage. *State* v. *Ross,* 55 Ore. 450; *Milbrath* v. *State,* 138
Wis. 354.

On the theory that it does not contain all of the elements
of embezzlement under our statute, state's instruction No.
1 is alleged to be erroneous. It reads: "The Court instructs
the jury that the essential element of the crime of em-
bezzlement is the breach of a trust or confidence. Not every
breach of trust will necessarily constitute embezzlement but
every embezzlement must arise from a breach of trust.
When money or other property is entrusted by one person
to another to be delivered to a third person or to be re-
delivered to the owner at a certain specified time or place,
or upon the happening of a specified contingency, or when
the object for which it has been delivered is accomplished,
and the person to whom it has been intrusted before delivery,
or redelivery to a third person or owner converts the same to
his own use, he is guilty of embezzlement, and he con-

verts the property or money to his own use whenever, with intent to defraud, he puts it to use other than that for which it was delivered to him or disposes of it in such a manner as to render it impossible for him to deliver or redeliver the same to such third person or owner at the time or place designated, or upon the happening of · the specified contingency or when the object for which it has been intrusted to him has been accomplished.'' Without analyzing this instruction, it is enough to say that it is abstract, and should not have been given in that form. It makes no reference whatever to the evidence nor does it submit to the jury the finding from the evidence of the facts giving rise to the law thus abstractedly stated. Instructions should apply the law to the facts of the case. ''An instruction, however pertinent and applicable it may be, is abstract unless it be made to apply, in express terms, either to the attitude of the parties or to the very facts in issue.'' Blashfield on Instr. sec. 92. *Parker* v. *Building & Loan Ass'n.,* 55 W. Va. 134. Such instructions should not be given, but if given, and there be evidence to which they are applicable it will not be cause for reversal, unless it is clear that the jury has been, misled or confused thereby. *State* v. *Long,* 88 W. Va. 669; 108 S. E. 279.

An order will be entered reversing the judgment, setting aside the verdict and remanding the case for a new trial.

*Reversed and remanded.*