STATE OF WEST VIRGINIA

*v.*

FRANK A. PIETRANTON

(No. 10661)

Submitted September 14, 1954. Decided November 23, 1954.

*C. Lee Spillers, James R. Wilkin,* for plaintiff in error.

*John G. Fox,* Attorney General, *Fred H. Caplan,* Assistant Attorney General, for defendant in error.

GIVEN, PRESIDENT:

Frank A. Pietranton was indicted in the Circuit Court of Brooke County, November 3, 1952. The indictment charged that defendant "on or about the 8th day of December, 1949, in the said County of Brooke, United States Currency of the value of $2833.33, of the money, goods, effects and property of one Eugene James Iacuone, feloniously did steal, take and carry away, against the peace and dignity of the State." On the first trial had on this indictment, commenced on December 15, 1952, the jury were unable to agree on a verdict. On the second trial thereon, commenced June 22, 1953, defendant was found "guilty as charged in the indictment". He was sentenced to the West Virginia Penitentiary for a period of not less than one nor more than ten years. This Court granted a writ of error.

The $2,833.33 alleged to have been stolen is the fund represented by the check involved in the case of *State* v. *Pietranton,* 137 W. Va. 477, 72 S. E. 2d 617, and in the case of *Iacuone* v. *Pietranton,* 138 W. Va. 776, 77 S. E. 2d 884. Detailed statements of pertinent facts are made in those cases. We state here only such facts as are believed to be essential to an understanding of the questions to be considered.

Defendant, an attorney at law, was employed by Eugene James Iacuone to prosecute an action on behalf of Iacuone for damages resulting from an automobile accident, whereby Iacuone lost a leg. The employment was on a contingent fee basis, defendant contending that he was to receive fifty per cent of any recovery, and Iacuone contending that the fee was to be one third of any recovery had without trial. Settlement of the claim, in the amount of $18,500.00, was effected without trial. Pietranton employed another attorney to assist him in the prosecution of Iacuone's claim. The attorney so employed apparently understood that he was to receive one half of any fee, while Pietranton contends that the attorney so employed was to receive only one half of one third of any recovery. The sum of $2,833.33 represents the amount of the contingent fee which Pietranton claims was due him over and above the amount paid by him to the attorney so employed. In making disbursement of the $18,500.00, Pietranton drew a check on his own account, payable to Eugene James Iacuone, in the amount of $2,833.33, and obtained Iacuone's indorsement thereon at the time of delivery of a check to Iacuone for $9,000.01, claimed by defendant to be Iacuone's proportionate share of the recovery. The sum represented by the check for $2,833.33 is the United States currency alleged in the indictment in the present case to have been stolen by defendant. Other pertinent facts will appear in the consideration of the several questions involved.

The indictment of defendant involved in the previous case, mentioned above, alleged that defendant, by means of fraudulent and false pretenses, did then and there "feloniously and unlawfully obtain the said paper writing of value, to-wit: the said negotiable instrument, commonly called a 'bank check' * * *". On writ of error to this Court it was held that defendant did not, by obtaining the indorsement of Iacuone, obtain any property which could be the subject of larceny. Based on that holding, defendant filed a special plea and an amended special plea, alleging facts contended by him to be sufficient to show that the former adjudication constituted a bar to any further prose-

cution by the State concerning the transaction. The trial court sustained a demurrer to the amended special plea.

We are of the opinion that the action of the trial court in sustaining the demurrer to the amended special plea was correct, whether the plea be considered as a plea of *autrefois acquit*, as a plea raising a question as to the "law of the case", or as a plea as to the sufficiency of the facts alleged in the indictment to constitute an offense. Code, 61-3-20, under which the indictment in the instant case was drawn, provides: "If * * * any agent, clerk or servant of any firm or person, or company or association of persons not incorporated, embezzle or fraudulently convert to his own use, bullion, money, bank notes, drafts, security for money, or any effects or property of any other person, which shall have come into his possession, or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of the larceny thereof * * *". The indictment in the first case was under a different statute, Code, 61-3-24. The charge there was that defendant obtained a check through false representations which, under the statute, constitutes larceny. In other words, the offense charged in the indictment in the instant case is a wholly different offense from that charged in the former indictment. In *State* v. *Taylor*, 130 W. Va. 74, 42 S. E. 2d 549, this Court held: "2. The provision of Article III, Section 5 of the Constitution of this State which forbids that any person, in any criminal case, shall be twice put in jeopardy of life or liberty for the same offense applies only to the same offense. It has no application to another or different offense." See *State* v. *Burford*, 136 W. Va. 472, 67 S. E. 2d 855; *State* v. *Burke*, 130 W. Va. 64, 42 S. E. 2d 544; *State* v. *McLane*, 126 W. Va. 219, 27 S. E. 2d 604; *State* v. *Little*, 120 W. Va. 213, 197 S. E. 626. Neither is a plea of former jeopardy sufficient where based on a former trial under a fatally defective indictment. *State* v. *Runyon*, 100 W. Va. 647, 131 S. E. 466. See *State* v. *Shelton*, 116 W. Va. 75, 178 S. E. 633.

In *Kaufman* v. *Catzen*, 108 W. Va. 1, 150 S. E. 371, the rule relating to the "law of the case" is stated in this

language: "1. It is the general rule, subject to few exceptions, that a question of law or fact once definitely settled and determined by this Court, on remanding the case for further proceedings, is conclusive on the parties and privies thereto, and upon the court below, and upon this Court upon a second appeal or writ of error." The offense charged in the second indictment being distinctly different from the offense attempted to be charged in the first indictment, the holding of the Court that the first indictmen was insufficient to charge a crime could not constitute "the law of the case" as to the different offense. The rule, therefore, can have no application to the facts of the present case. See *Moran* v. *Leccony Smokeless Coal Co.*, 124 W. Va. 54, 18 S. E. 2d 808; *Highland* v. *Davis*, 121 W. Va. 524, 6 S. E. 2d 922; *William C. Atwater & Co.* v. *Fall River Pocahontas Collieries Co.*, 119 W. Va. 549, 195 S. E. 99; *Roberts* v. *Lykins*, 106 W. Va. 280, 145 S. E. 440.

The indictment in the instant case in form is a common law indictment for larceny, charging defendant with having stolen $2,833.33. Code, 61-3-20, makes one who has embezzled money guilty of larceny. The effect of the statute in this respect is to so broaden the meaning of the word larceny as to make it include the crime of embezzlement. In *Swick* v. *Bassell*, 77 W. Va. 78, 87 S. E. 176, this Court held: "1. On a common law indictment for larceny, evidence of embezzlement is admissible and, on it, there may be a conviction of the latter offense, if the evidence is sufficient." See *State* v. *Cantor*, 93 W. Va. 238, 245, 116 S. E. 396; *State* v. *Workman*, 91 W. Va. 771, 114 S. E. 276; *State* v. *DeBerry*, 75 W. Va. 632, 84 S. E. 508. We are of the opinion, therefore, that the indictment was of sufficient form and effect, and that the State was entitled thereunder to introduce proof as to the crime of embezzlement.

We next consider the matters arising on defendant's motion for a change of venue. The indictment in the instant case was returned on November 3, 1952. Prior to December 8, 1952, the Honorable J. J. P. O'Brien, Judge of the Circuit Court of Brooke County, withdrew from further consideration of the case and designated the

Honorable Lloyd Arnold, Judge of the Second Judicial Circuit, as the Judge to try the case. On that date defendant filed his motion for a change of venue and filed numerous exhibits and several affidavits in support of the motion. The exhibits consisted of photostatic copies of articles appearing in several newspapers, apparently of general circulation in Brooke County. Such articles appeared between March 31, 1951, and December 4, 1952. For the most part, they merely stated facts connected with the indictment and trial of defendant in the different criminal prosecutions, the prosecution of the civil case of Iacuone against defendant, one of several other cases wherein Pietranton was supposed to have been involved, theretofore prosecuted in Brooke or Hancock County, or of the action of this Court in one or more of the proceedings wherein Pietranton was involved. The affidavits filed are to the general effect that affiants talked with numerous individuals who believed defendant could not obtain a fair trial in Brooke County, heard statements made by individuals to that effect, or observed proceedings in court involving Pietranton which led them to such belief, or that because of the many newspaper articles affiants believed that there existed such prejudice against Pietranton as to render impossible a fair and impartial trial of his case in Brooke County. The order of December 8, 1952, overruling the motion of defendant for a change of venue, states that certain other evidence was offered by defendant in support of the motion and certain evidence was offered by the State in opposition to the motion, and considered by the court. The evidence of the State in opposition to the motion is not contained in the record. In the absence of such evidence, this Court would not be warranted in reversing the judgment of the trial court in overruling the motion for a change of venue. Nevertheless, we have carefully examined the evidence of defendant before us relative to the motion and have reached the conclusion that, in so far as that evidence indicates, the trial judge did not abuse the broad discretion vested in him as to such motion. See *State* v. *Wooldridge*, 129 W. Va. 448, 40 S. E. 2d 899;

*State* v. *Beale,* 104 W. Va. 617, 141 S. E. 7; *State* v. *Lucas,* 103 W. Va. 743, 138 S. E. 393; *State* v. *Powers,* 91 W. Va. 737, 113 S. E. 912.

We find no reversible error in the action of the trial court in denying defendant's motion for a further or more particular bill of particulars, made on December 8, 1952, and renewed before the commencement of the second trial. At the time defendant demanded the bill of particulars, the prosecuting attorney "announced in open court that the State's bill of particulars would be substantially the record of a former trial of *State* v. *Pietranton* heretofore tried in this court, except that the State would prove that the defendant embezzled money under the indictment for larceny in this case * * *". The practice of referring a defendant to a record of a different case instead of furnishing a bill of particulars is not, of course, approved. Neither the trial court nor this Court should be required to look to the entire record of some other case in order to determine the sufficiency of a bill of particulars, or whether proof offered by the State conformed to such a bill. In the instant case, however, the indictment being simply for common law larceny and the defendant being an attorney at law and having been clearly informed that he was to be tried under the indictment for embezzlement, we can not believe that he was prejudiced in any manner. He had full knowledge of the record in the prior case. He also had knowledge of all proceedings before the jury in the first trial under the indictment in the instant case, wherein the jury were unable to agree on a verdict. In these circumstances, we are of the opinion that defendant could not have been misled as to which offense he was to be tried, or as to controlling facts on which the State would rely for conviction. The defendant in a criminal case is not, as a matter of right, entitled to a bill of particulars. The granting of such a bill rests very largely in the discretion of the trial court. *State* v. *Davis,* 139 W. Va. 645, 81 S. E. 2d 95; *State* v. *Greater Huntington Theatre Corp.,* 133 W. Va. 252, 55 S. E. 2d 681; *State* v. *Hudson,* 128 W. Va. 655, 37 S. E. 2d 553, 163 A. L. R. 1265; *State* v. *Joseph,* 100

W. Va. 213, 130 S. E. 451; *State* v. *Counts*, 90 W. Va. 338, 110 S. E. 812; *State* v. *Railroad Co.*, 68 W. Va. 193, 69 S. E. 703.

Neither do we believe there to be reversible error in the action of the trial court in overruling defendant's motion for a continuance. The ground of the motion, in so far as material here, was based on the following facts. The trial court, having excused certain jurors regularly called to serve at the term at which defendant was to be tried, shortly before the day set for trial, caused other jurors to be summoned for the trial of defendant. In the drawing of the jury for the trial the list of available jurors was exhausted before the panel of twenty qualified jurors was obtained. Additional jurors were then summoned to appear forthwith. Defendant contends that he was prejudiced by such actions of the court, in that he was denied the right accorded to him by Code, 62-3-1, as amended, to have "the list of the jurors selected or summoned for his trial" in sufficient time for the making of an investigation as to the qualifications of such jurors. Another statute, however, Code, 62-3-3, as amended, provides: "In a case of felony, twenty jurors shall be drawn from those in attendance for the trial of the accused. If a sufficient number of jurors for such panel cannot be procured in this way, the court shall order others to be forthwith summoned and selected, until a panel of twenty jurors, free from exception, be completed * * *". Still another statutory provision, Code, 52-1-15, provides: "Nothing contained in the preceding sections shall prevent any court, in term time, from requiring other jurors to be drawn by the clerk, in the presence of the court, and to be summoned whenever it shall be found necessary for the convenient dispatch of business * * *". These provisions furnish clear authority for the action of the trial court in overruling the motion for a continuance. Moreover, the granting of a motion for a continuance is addressed to the sound discretion of the trial court, and an appellate court will not interfere unless it clearly appears that such discretion has been abused. See *State* v. *Burdette*, 135 W. Va. 312, 63 S. E.

2d 69; *State* v. *Currey,* 133 W. Va. 676, 57 S. E. 2d 718; *State* v. *Simmons,* 130 W. Va. 33, 42 S. E. 2d 827.

After certain jurors had qualified, a prospective juror, while being examined on his *voir dire* in the presence and hearing of jurors who had qualified, stated: "Your Honor, I have got a leg off below the knee, and I am afraid I would be biased and prejudiced in this case, and I don't think I should serve on it * * * I fought this about three years and it cost me quite a bit of money, and I don't think I could render a true verdict * * * I would be prejudiced". The juror was not permitted to serve. After the juror was excused, defendant moved the court for a mis-trial, contending that the statements of the juror were of such nature as to prejudice other jurors and to render impossible a fair and impartial trial. We think the question was peculiarly one for the trial court. We can not determine, from the statements alone, what effect they may have had on the other jurors, and no attempt was made to show that defendant was actually prejudiced by the statements. The statements of themselves do not necessarily indicate that other jurors were probably prejudiced. In the recent case of *Ritz* v. *Kingdon,* 139 W. Va. 189, 79 S. E. 2d 123, this Court held: "1. In the selection of a jury in a criminal case or a civil action a trial court is vested with a sound discretion and its action in excusing a qualified juror and in excluding a qualified juror upon challenge for cause will not be disturbed by an appellate court unless it appears that the complaining party was prejudiced by the removal of such jurors from the panel." See *State* v. *Beacraft,* 126 W. Va. 895, 30 S. E. 2d 541; *State* v. *Price,* 96 W. Va. 498, 123 S. E. 283; *State* v. *Lutz,* 85 W. Va. 330, 101 S. E. 434.

One of the matters vigorously contested on the trial related to the place at which the check representing the $2,833.33 was indorsed by Iacuone, the State contending that the check was indorsed at the home of Iacuone in Brooke County and defendant contending that it was indorsed by Iacuone at or near the entrance to the stairway leading to defendant's office, in Hancock County. There

seemed to be no question that the check was indorsed on Thursday afternoon, December 8, 1949. In support of defendant's contention, Robert Leach was called as a witness. He testified to the effect that he was in the office of defendant between three and four o'clock in the afternoon of a Thursday, in the early part of December, 1949, and that he then saw in the office Pietranton's secretary, one De-Franco, and defendant. He could not, however, say definitely that the date of his visit was December 8, 1949. He was asked if he was in the office of defendant "on any other Thursday afternoon in the month of December, 1949", but was not, on objection of the State, permitted to answer. The witness Dolores Kozielska had previously testified to the effect that the witness Leach was in defendant's office on the afternoon of December 8, 1949. After a statement of counsel for defendant as to what the evidence offered would tend to prove, the court ruled that "Until the date is established, the offer is refused". We are of the view that the defendant had sufficiently established that the witness was in the office at the time material, or sufficiently near the time, to permit further questioning concerning facts material to issues involved. The inability of the witness to remember the exact date would go to the weight of the evidence, rather than to its admissibility. From statements of counsel, testimony of the witness would probably have been in conflict, at least, with testimony of the State, and may have been important to defendant's theory of the case. We do not say, of course, that answers to further questions would have been admissible. That would depend on whether they were admissible under applicable rules of evidence.

Defendant complains of the admission of certain evidence offered in rebuttal by the State. The State, in offering its evidence in chief, introduced several witnesses who testified to the effect that defendant took the check involved to the home of Iacuone, in Brooke County, and that it was there indorsed by Iacuone. Several witnesses for defendant, including defendant himself, testified to the effect that the check was indorsed by Iacuone near

Pietranton's office in Hancock County, and that Pietranton was at his office during the time he was allegedly at the home of Iacuone. On rebuttal the State offered five witnesses who had not previously testified, Mrs. Orsini, Mrs. Basil, Mrs. D'Allesandro, DeFranco and Brown. These witnesses testified, principally, at least, as to matters concerning issues about which other witnesses for the State had testified during the introduction of the State's evidence in chief. Some of the evidence offered on rebuttal had the effect, of course, of contradicting statements made by defendant. It is clear, however, that a substantial part of the State's evidence as to certain issues was received as rebuttal evidence, and no satisfactory reason why such evidence could not have been introduced by the State as evidence in chief is shown of record. In *State* v. *Williams,* 49 W. Va. 220, 38 S. E. 495, this Court held: "3. Whether a party shall introduce further evidence after that of the adverse party has been heard, is a matter within the sound discretion of the court, and its exercise will rarely, if ever, be the cause of reversal. Clearly, he is entitled to introduce evidence to rebut that of the other party." See *State* v. Fitzsimmons, 137 W. Va. 585, 73 S. E. 2d 136; *Farley* v. *Farley,* 136 W. Va. 598, 68 S. E. 2d 353; *State* v. *Cobb,* 122 W. Va. 97, 7 S. E. 2d 443; *State* v. *Driver,* 88 W. Va. 479, 107 S. E. 189, 15 A.L.R. 917; *Lewis* v. *Alkire,* 32 W. Va. 504, 9 S. E. 890. In *State* v. *Atwell,* 109 W. Va. 257, 153 S. E. 583, this Court held: "Although the order of proof is, as a rule, within the discretion of the trial court, an exception arises where it appears that the party objecting was, or may have been, prejudiced by the irregular admission of evidence." While we do not approve as proper practice the action of the State in withholding the evidence of the witnesses offered on rebuttal until after defendant had rested, we are nevertheless of the opinion that defendant was not so clearly prejudiced as to necessitate a reversal on that ground. We can not say that the trial court erred in the exercise of the broad discretion vested in it.

The next contention of defendant to be considered relates to allegedly improper statements made by counsel

for the State in closing arguments to the jury. One of such statements related to the witness Dolores Kozielska, who testified on behalf of defendant. This statement was: "She says she wrote the declaration with Canestrano made a defendant, like Pietranton wanted, but when she looked at the file she says it wasn't her work. She was trying to help him [defendant] and she lied." Another statement was: "Pietranton wrote the check to Mr. Iacuone and then he swindled him out of it * * * You saw Mr. Iacuone on the stand, but don't pay any attention to him, no sympathy for him—a shell of a man with toes that don't react because they are not on that foot. That foot is gone. His mind is shattered * * * Who is going to support the family? That is why Mr. Iacuone signed that check * * *". Later in the argument this statement was made: "The Iacuones got children too. And Frank Pietranton has got two legs and Mr. Iacuone has got one. I say, how hard up can you get when you are going to take 2833.33 from these people?" Another statement was: "He had sold her [Mrs. Iacuone] down the river. With a cold, calculating manner he had fooled her." We need not here point out other statements complained of.

No objection to any of the statements complained of appears in the record until after the jury had retired to their room to consider of their verdict, when a motion was made on behalf of defendant to declare a mistrial. It can not be doubted, we think, that some of the statements were highly improper and prejudicial. Some of them clearly invited sympathy because of the very unfortunate condition of Mr. Iacuone. Sympathy, of course, should have no place as an aid to the State in obtaining a conviction. This Court, however, has often indicated that trial courts have great latitude in matters relating to arguments of counsel. In *State v. Allen,* 45 W. Va. 65, 30 S. E. 209, this Court held: "6. Counsel necessarily have great latitude in the argument of a case, and it is, of course, within the discretion of the court to restrain them; but with this discretion, the appellate court will not interfere, unless it clearly appears from the record that the rights of the prisoner were

prejudiced by such line of argument." See *State* v. *Lewis,* 133 W. Va. 584, 57 S. E. 2d 513; *State* v. *Reppert,* 132 W. Va. 675, 52 S. E. 2d 820; *State* v. *Hively,* 103 W. Va. 237, 136 S. E. 862; *State* v. *Boggs,* 103 W. Va. 641, 138 S. E. 321. It has also been pointed out that this Court ordinarily will not reverse a judgment of conviction in a criminal case because of intemperate remarks of counsel for the State made in closing arguments, unless objections have been made to such remarks in time for the trial court to instruct the jury to disregard them. In *State* v. *Graham,* 119 W. Va. 85, 191 S. E. 884, this Court held: "2. Abusive and intemperate language, used by a prosecuting attorney against the accused and his witnesses in the conduct of a criminal trial, calculated to inflame the passions of the jury, may be reversible error, not curable by the rulings of the trial court." It would seem that where such remarks are of such an intemperate nature, or so prejudicial as to be incapable of being corrected by an instruction of the court to the jury, that a motion for a mistrial should be granted, notwithstanding an objection was not made at the time of the statement. In *State* v. *Harlow,* 137 W. Va. 251, 71 S. E. 2d 330, this Court stated: "We are not to be understood as indicating that an objection to every inflammatory or other unwarranted and prejudicial argument is required to be made before the same can be considered on appeal. It may be, in some circumstances, that the argument will prove so inflammatory or otherwise unwarranted and prejudicial as to be beyond the power of the court to correct at the time, by instruction or otherwise. It is sufficient to say that the statements complained of here clearly do not fall within such a class. The fact that a prosecuting attorney, as a representative of the State, is under a duty not to convict regardless of guilt, but to assist in affording a defendant charged with crime a fair and impartial trial, would necessarily have to be considered when such a question arises." In view of these holdings and the fact that the members of this Court participating in the decision of this case are not in full accord on this point, and in view of the further fact that this case must be reversed on other

grounds, we need not here determine whether the error was such as would call for a reversal, notwithstanding there was no objection made to the remarks immediately following the making of the statement. See *State* v. *Summerville*, 112 W. Va. 398, 164 S. E. 508.

At the close of the evidence of the State offered in chief, defendant moved the court to exclude the State's evidence and to direct a verdict for defendant. A motion for a directed verdict in favor of defendant was also made at the close of all the evidence. The motions were overruled, and exceptions were saved to defendant. Also, defendant offered an instruction which would have directed the jury to return a verdict in his favor, which instruction the court refused to read to the jury, and an exception was saved. Another instruction, II, offered by defendant and refused, to which action an exception was saved, reads: "The Court instructs the jury that, as defendant is indicted for larceny of currency and as he received nothing in Brooke County but a check, you will find the defendant not guilty." While the quoted instruction is peremptory in form, it does point out the question whether the State proved the commission of the crime of embezzlement in Brooke County, the county wherein the indictment charged the offense to have been committed.

As before noted, the State, under an indictment charging larceny, undertook to prove the offense of embezzlement, which, as pointed out above, it had the right to do. The indictment charged that the offense was committed in Brooke County and the State was, of course, required to prove that the offense was committed in that county if a conviction were to be sustained. *State* v. *McAllister*, 65 W. Va. 97, 63 S. E. 758, 131 Am. St. Rep. 955. In attempting to prove venue of the offense as being in Brooke County, the State relied wholly on testimony of witnesses to the effect that the indorsement of the check for $2,833.33 by Iacuone was obtained at the home of Iacuone in Brooke County. Can it be said that the obtaining of the indorsement constituted the offense of embezzlement? Section 14 of Article III of the State Constitution requires that "Trials of

crimes and misdemeanors, unless herein otherwise provided, shall be \*\*\* in the county where the alleged offence was committed \* \* \*". In *State* v. *Dignan,* 114 W. Va. 275, 171 S. E. 527, it was held that the venue contemplated by the constitutional provision was actual, not constructive.

It may be noticed that the pertinent part of the statute under which the indictment was drawn, quoted above, merely provides that if any agent "embezzle" money, he shall be guilty of larceny. In *State* v. *Hudson,* 93 W. Va. 435, 117 S. E. 112, this Court held: "\* \* \* the word 'embezzle' includes in its meaning a conversion or appropriation to the embezzler's own use; therefore the use of the word 'embezzle' in an indictment under the statute contains within itself the charge that the defendant converted the property to his own use." Part Point 1 of Syllabus. In *State* v. *Holley,* 115 W. Va. 464, 177 S. E. 302, this Court held: "1. Conversion, as a necessary element of the statutory offense of embezzlement, is the fraudulent appropriation of another's property to one's own use." In *State* v. *DeBerry,* 75 W. Va. 632, 84 S. E. 508, this Court stated: "\* \* \* To be guilty of embezzlement, one must 'convert' to his own use the money or goods entrusted to his care. The statute uses the word 'convert'. What will amount to such conversion? It will be noted that the time for defendant to return the rugs had not expired. They were not to be delivered until the next morning. That was his contract. He proposed to sell the rugs, but had not done so. He had stored them in Womeldorff's stable, and this is the only evidence in any way tending to show conversion, or intent to deprive the owner of his property. See *Penny* v. *State,* 88 Ala. 105. Many definitions of conversion are found in the books. 2 Words & Phrases, 1562, et seq.; 1 Words & Phrases, (2nd series) 1030, et seq. The most comprehensive of these definitions, and perhaps the most accurate, is found in 1 Bouvier's Law Dict., (Rawle's 3rd Revision) 668, and in Black's Law Dict., (2nd ed.) 267, as follows: 'An unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion

of the owner's right.' Does the evidence bring defendant's acts clearly within this definition of conversion? We do not think it does * * *". See *State* v. *Smith,* 117 W. Va. 598, 186 S. E. 621; *State* v. *Larue,* 98 W. Va. 677, 128 S. E. 116; *State* v. *Cantor,* 93 W. Va. 238, 116 S. E. 396; *State* v. *Workman,* 91 W. Va. 771, 114 S. E. 276; *State* v. *Fraley,* 71 W. Va. 100, 76 S. E. 134, 42 L.R.A., N.S., 498; *State* v. *Moyer,* 58 W. Va. 146, 52 S. E. 30. These authorities make it clear that unless and until there has been an appropriation or conversion, no offense of embezzlement has been committed. The obtaining of an indorsement of a check, though obtained fraudulently and with intent to enable one to embezzle the sum of money represented by the check, does not constitute the offense of embezzlement of that sum. Though the indorsement be so obtained, an appropriation or conversion may never be made. The person so obtaining the indorsement may not carry out the evil purpose for which the indorsement was obtained. Intent, though a necessary element of embezzlement, does not constitute the offense. *State* v. *Smith, supra; State* v. *Holley, supra;* and *State* v. *DeBerry, supra.* We are therefore forced to the conclusion that the State failed to offer any proof that defendant embezzled the $2,833.33 in Brooke County. That such failure necessitates reversal of the judgment of conviction can not be doubted. See *State* v. *Harrah,* 101 W. Va. 300, 132 S. E. 654; *State* v. *Hobbs,* 37 W. Va. 812, 17 S. E. 380; *State* v. *Mills,* 33 W. Va. 455, 10 S. E. 808; *Hoover* v. *State,* 1 W. Va. 335.

We have not failed to notice that the check for the $2,833.33 was deposited in The People's Bank of Weirton, West Virginia, and that the check for $18,500.00, delivered to defendant in settlement of the Iacuone claim, was also deposited in that bank. We are not unmindful that courts, in certain instances, take judicial notice that a certain city or area is situated within a certain county. See *State* v. *McDonie,* 89 W. Va. 185, 109 S. E. 710; *State* v. *Hensley,* 86 W. Va. 434, 103 S. E. 204; *Beasley* v. *Town of Beckley,* 28 W. Va. 81; 22 C. J. S., Criminal Law, Sections 540, 541. This Court, however, can not take judicial notice of

whether The Peoples Bank is situated within that part of Weirton lying in Brooke County or within that part thereof lying in Hancock County. Neither are we actually advised of that fact, by the record or otherwise. See *Vaughan* v. *Town of Galax*, 173 Va. 335, 4 S. E. 2d 386.

Defendant complains of the action of the trial court in giving to the jury State's Instructions Nos. 3, 4, 6, 13 and 16. Instruction No. 3 told the jury that defendant was entitled to the benefit of every reasonable doubt, defined reasonable doubt, and contained this sentence: "Everything relating to human affairs *are* depending on oral evidence is open to some possible or imaginary doubt." The sentence is somewhat confusing, if not incorrect. We are of the view, however, that it did not mislead the jury or in any manner prejudice defendant.

Instruction No. 4 told the jury, in effect, that if they believed from the evidence that defendant attempted "to intimidate or corrupt" certain witnesses, they had the right to consider such finding in connection with other testimony. In our view, there was sufficient evidence to warrant the giving of the instruction and it was properly given in the circumstances of this case. *State* v. *McKinney*, 88 W. Va. 400, 106 S. E. 894. Instruction No. 6 reads, in part: "The Court instructs the jury that if you believe from the evidence in this case beyond a reasonable doubt that the defendant, Frank A. Pietranton, in Brooke County, West Virginia, obtained from Eugene James Iacuone the sum of $2833.33, or its equivalent, and that said money was obtained from the said Eugene James Iacuone by the artifice, trick, or pretension of a false representation * * *". The principal error in the giving of the instruction in this case is that there was no evidence in the record to support it. As pointed out above, the State offered no proof that any conversion or appropriation took place in Brooke County. The record does not establish that defendant received anything in Brooke County except the indorsement of Iacuone on defendant's own check, which we held in *State* v. *Pietranton, supra,* to be nothing of value. Another error in the instruction is the use of the words

"or its equivalent". The indictment was for larceny of $2,833.33, not the equivalent of that sum. From the language used, the jury may have believed that the indorsement of the check for $2,833.33 was the equivalent of that sum, since there was no proof in the record of defendant having received anything other than that indorsement. See *State v. Shelton,* 116 W. Va. 75, 178 S. E. 633; *State v. Fama,* 107 W. Va. 335, 148 S. E. 202.

State's Instruction No. 13 reads: "The Court instructs the jury that, although the defendant, Frank A. Pietranton, is presumed to be innocent until he is proven guilty beyond a reasonable doubt, the Court further instructs you that the moment you are satisfied that the defendant is guilty beyond a reasonable doubt, from all of the evidence in this case, then the presumption of innocence vanishes and you may find him guilty as charged in the Indictment in this case." The objection to the instruction rests on the fact that the jury were told that the presumption of innocence vanishes "the moment you are satisfied that the defendant is guilty beyond a reasonable doubt, from all of the evidence in this case". Is not a defendant in the trial of a criminal case entitled to the benefit of the presumption of innocence until the jury have found a verdict of guilty? Does that presumption vanish at any point in the trial of such a case before a verdict of guilty?

In 22 C. J. S., Criminal Law, Section 581, it is stated: "Accused enters on the trial with the presumption of innocence in his favor. According to some authorities, the presumption does not cease when the case is submitted to the jury, but attends accused throughout the trial, at every stage, until the close thereof, when the jury arrive at their verdict and accused is convicted. Other authorities, however, hold that the presumption of innocence does not necessarily attend accused throughout the whole trial. Common statements of the rule are that accused is presumed to be innocent until his guilt of the crime alleged is proved or established, and such guilt must be proven or established by legal and competent evidence, to the satisfaction of the jury beyond a reasonable doubt * * *".

In *State* v. *Staley,* 45 W. Va. 792, 32 S. E. 198, this Court approved the giving of an instruction which told the jury that "The court instructs the jury that the law presumes that the defendant, Virgil Staley, is innocent of the crime charged against him in the indictment in this case, and that such presumption follows him throughout every step of the trial * * *". This action of the Court was referred to with approval in *State* v. *Foley,* 131 W. Va. 326, 47 S. E. 2d 40. In *State* v. *Gebhart,* 70 W. Va. 232, 73 S. E. 964, the original record discloses that defendant's Instruction No. 7 contained this language: "The court further instructs the jury that the law presumes every person charged with crime to be innocent until his guilt is established by the State beyond all reasonable doubt, and this presumption of innocence goes with the prisoner through the entire case and applies to every stage thereof * * *". The instruction was given to the jury. In approving the giving of this and other instructions the Court stated: "* * * We have carefully considered both those given and those refused, and we are clearly of the opinion that those given covered the whole subject of the law bearing upon any material facts supported in the case, and that they fairly presented both the theory of the state and the theory of the defense * * *".

In *State* v. *Boggs,* 129 W. Va. 603, 42 S. E. 2d 1, Judge Fox, in a concurring opinion, used this language: "* * * But over a long period of time, reaching beyond the memory of any member of this Court, the principle that a defendant, in a criminal trial, is presumed to be innocent, and that this presumption follows him through every stage of his trial, is so imbedded in our system of criminal law, that I can see no reason why we should now depart from it. I do not think it would be error in a trial court to fail to give such an instruction, when not asked to do so; but when request therefor is made, I think an instruction along that line should be given."

In *State* v. *Reppert,* 132 W. Va. 675, 52 S. E. 2d 820, wherein the defendant was tried for murder, there was offered in his behalf an instruction dealing with the presumption

of innocence, which instruction was refused. The court, however, in a general charge, told the jury "* * * every person is presumed to be innocent until he is proven guilty beyond all reasonable doubt. This presumption of innocence is not a mere matter of form, but is a substantial part of the law of the land and goes with the prisoner throughout every stage of the trial". The language used in the charge was approved by this Court.

In 5 M.J., Criminal Procedure, Section 51, it is stated: "The presumption of innocence is a continuing one and step by step keeps pace with the progress of the case, to be balanced against evidence of guilt throughout the trial. Its protective covering is not stripped away until the jury, evidenced by its verdict, has reached the conclusion that guilt has been established. It follows the accused through every stage of the prosecution."

In *Boyd* v. *Commonwealth,* 156 Va. 934, 157 S. E. 546, it was held: "15. Presumption of innocence goes with defendant throughout case, and jury should acquit unless they have abiding conviction to moral certainty of guilt." To the same effect are *Miller* v. *Commonwealth,* 181 Va. 906, 27 S. E. 2d 57; *Grosso* v. *Commonwealth,* 177 Va. 830, 13 S. E. 285; *Keeton* v. *Commonwealth,* 152 Va. 1036, 148 S. E. 783; *Canter* v. *Commonwealth,* 123 Va. 794, 96 S. E. 284; *Potts* v. *Commonwealth,* 113 Va. 732, 73 S. E. 470.

In 5 Wigmore on Evidence 503, the analogy between the rule relating to a presumption of innocence and the rule relating to the burden of proof in criminal cases, as quoted in *State* v. *Foley,* 131 W. Va. 326, 47 S. E. 2d 40, is made in this language: "The *'presumption of innocence'* is fixed in our law. But this term has been the subject of two special fallacies, namely, 1, that it is a genuine addition to the number of presumptions, and, 2, that it is *per se* evidence. * * * As to the first of these fallacies, it is to be noted that the presumption of innocence is in truth merely another form of expression for a part of the accepted rule for the burden of proof in criminal cases, i. e. the rule that it is for the prosecution to adduce evidence, and to produce

persuasion beyond a reasonable doubt. * * * However, in a criminal case the term does convey a special and perhaps useful hint, over and above the other form of the rule about the burden of proof, in that it cautions the jury to put away from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment, and to reach their conclusion solely from the legal evidence adduced. In other words, the rule about burden of proof requires the prosecution by evidence to convince the jury of the accused's guilt; while the presumption of innocence, too, requires this, but conveys for the jury a special and additional caution (which is perhaps only an implied corollary to the other) to consider, in the material for their belief, *nothing but the evidence,* i. e., no surmises based on the present situation of the accused. This caution is indeed particularly needed in criminal cases * * *". The two rules being so nearly alike in effect, it seems pertinent to note that the rule relating to the burden of proof in a criminal case "rests on the prosecution at every stage of the trial and never shifts, not even when the prosecution has established a prima facie case." 22 C. J. S., Criminal Law, Section 566.

We find no holding in this State indicating that a defendant in a criminal prosecution is not entitled to the presumption of innocence at every stage of his trial. From the statements found in the cases cited above, it appears that this Court has, generally, at least, recognized that the presumption continues as an aid to the defendant through every stage of the trial, until a verdict of guilty has been found by a jury. This, of course, includes the reading of the instructions or charge, the arguments of counsel and the weighing of the evidence by the jury. It is to be weighed by the jury along with all the evidence of defendant, against all the evidence of the State. To hold that the presumption "vanishes" at any stage of a trial before verdict of guilty, would deny a defendant in a criminal prosecution much of the value of the presumption. The rule, being one of law, as pointed out in *State* v. *Reppert, supra,* we think necessarily continues through every stage of the

trial as an aid to the defendant. The giving to the jury of State's Instruction No. 13, therefore, constituted reversible error.

We have not overlooked the fact that other instructions read to the jury, defendant's No. 13, for example, substantially covered the law relating to the presumption of innocence. An error created by the reading to the jury of a bad instruction, however, is not cured by the reading of a good instruction. In *State* v. *Garner*, 97 W. Va. 222, 124 S. E. 681, this Court held: "2. A bad instruction is not cured by a good one given to the jury, and with which it is in conflict." See *State* v. *Harlow*, 137 W. Va. 251, 71 S. E. 2d 330; *State* v. *Cobb*, 122 W. Va. 97, 7 S. E. 2d 443.

State's Instruction No. 16 reads in part: "\* \* \* In determining the weight of the evidence and the credibility of the witnesses, you may take into consideration the interest any witness may have in the outcome of this case, as shown by the evidence, the demeanor of the witness on the witness stand, his or her relation, by blood, marriage or employment, to any of the parties or other witnesses, as shown by the evidence, his or her association in Court matters, in public or private business with any of the parties or with other witnesses, as shown by the evidence, intimate friendship of any of the witnesses with any of the parties or other witnesses as disclosed by the evidence or otherwise \* \* \*". We are of the opinion that the use of the words "or otherwise" renders the instruction defective, in that the jury were permitted to look beyond the evidence in the record to determine facts material to the defense. The instruction does inform the jury that they must look only to the evidence in the case concerning certain other matters, and other instructions given to the jury, defendant's Instruction No. 19, for example, directs them to consider only matters arising as evidence in the case. Yet we can not say that the conflict thus created did not prejudice defendant. As pointed out above, an error created by the giving of a bad instruction is not cured by the giving of a correct one.

Defendant complains further of the action of the court in refusing to read to the jury certain instructions offered by him. A number of such instructions related to defendant's theory of necessity of proof of venue of the offense for which he was tried. What has been said, we think, sufficiently disposes of the questions raised as to those instructions.

We see no error in the refusal of defendant's Instructions JJ and KK. Those instructions would have directed the jury's attention to evidence of defendant in an attempt to explain the method he used in arriving at the figure of $2,833.33 as part of his proportion of the contingent fee. We think defendant could not have been prejudiced by failure to have the jury's attention specifically directed to that particular evidence. See *State* v. *Ison,* 104 W. Va. 217, 139 S. E. 704. Defendant's Instruction LL would have told the jury that a contract of employment between Iacuone and defendant was "not an extraordinary or unusual contract", even though it was for fifty per cent of any recovery. Defendant's theory of his right to make such a contract was sufficiently covered by his Instruction MM, as amended, given to the jury. *State* v. *Bowles,* 109 W. Va. 174, 153 S. E. 308; *State* v. *Hayes,* 109 W. Va. 296, 153 S. E. 496; *State* v. *Dillard,* 59 W. Va. 197, 53 S. E. 117. Defendant's Instruction I would have told the jury that if defendant "believed that the moneys in the Weirton Bank against which was drawn the check endorsed by Iacuone belonged to him", even though defendant was mistaken in such belief, they should return a verdict of not guilty. Intent to appropriate property of another being an essential element of embezzlement, there could be no such offense, of course, where defendant actually believed the property belonged to him. In the instant case, however, no basis for mere belief appears in the evidence. Defendant had full knowledge of the terms of the contract of employment. He testified positively as to such terms. To his certain knowledge, the contract gave him fifty per cent of the recovery, or it did not. Whether the sum involved was his property or that of Iacuone was not a matter of belief with him, but

actual knowledge. With actual knowledge, no room for belief existed. There was, therefore, no evidence upon which the instruction could have been based.

We have not overlooked certain other questions argued by defendant. We think them sufficiently answered by what has been said, or of such little merit that further consideration is not called for.

The judgment of the Circuit Court of Brooke County is reversed, the verdict of the jury is set aside, and defendant is awarded a new trial.

*Reversed;*
*verdict set aside;*
*new trial awarded.*