STATE OF WEST VIRGINIA *v.* R. H. McLANE

(No. 9476)

Submitted October 12, 1943. Decided November 9, 1943.

*John T. Copenhaver, Lee, Blessing & Steed* and *Howard B. Lee,* for plaintiff in error.

*Ira J. Partlow,* Acting Attorney General, *Ralph M. Hiner,* Assistant Attorney General, and *J. Blackburn Watts,* for defendant in error.

KENNA, JUDGE:

Following his conviction of murder in the second degree R. H. McLane was sentenced to confinement in the penitentiary by the Intermediate Court of Kanawha County for the indeterminate term of not less than five nor more than eighteen years, and to the order of the Circuit Court of Kanawha County refusing a writ of error to that judgment, this writ of error was awarded. There are nine assignments of error, six being particular and the others general, and since there are no material controversies over the facts involved an outline of the relevant occurrences as shown by the record reveals a proper setting for a discussion of the errors assigned.

In September, 1940, the accused, R. H. McLane, and the deceased, Carl Burford, both had business establishments on Seventh Avenue in the first block west of Patrick Street in Charleston. They were competitors in the retail poultry and egg business and had on two previous occasions been partners in that business at approximately the same location, Burford having bought McLane's interest

in their last partnership and having continued in the same business at the partnership stand. McLane in formal compliance with a covenant contained in the bill of sale to Burford that he would not engage in the same business for a period of one year had gone to work in the same block for his brother in a like establishment recently acquired by that brother. Burford apparently regarded McLane's conduct as a breach of covenant, although the trouble between the two apparently originated before they became competitors. Having previously dissolved and then re-formed their partnership in the spring of 1939 they had an altercation at their place of business in which Burford, a man weighing one hundred ninety pounds, struck McLane with an empty bottle evidently in resentment of McLane's protest over a drinking party he found Burford conducting in their place of business. The blow caused copious bleeding and McLane escaped to his home which was in the immediate neighborhood. Here he determined to go to a hospital for treatment and upon leaving the house in the darkness Burford shot him, discharging both barrels of a shotgun. As a consequence the accused lost his right eye and was confined for several weeks. Upon his recovery he executed a bill of sale to Burford covering his interest in the business, releasing all claims for damages against Burford, and covenanting not to compete for one year. In the meantime McLane's brother had opened a similar establishment in the same block, and when able the accused went to work for him.

Prior to these occurrences and perhaps during them admitted improper relations existed between Burford's wife and the accused, although the record does not show to what extent, if at all, Burford was informed concerning them.

After the final dissolution of their partnership following the shooting of McLane by Burford, the latter frequently threatened McLane's life, calling him on the 'phone and driving slowly past his home for that purpose. Apparently Burford terrorized him by regular threats, includ-

ing a telephone conversation on the day of the homicide. McLane on several occasions complained to the police department.

Around twelve-thirty p. m. on September 17, 1940, Burford called McLane at his place of business and told him that he was "coming". The accused testified that soon after having received the threatening telephone call from Burford, the accumulated effect of which, together with past threats, shattered his nerves, he armed himself with a thirty-eight revolver and started home. He first looked toward Burford's place of business and did not see Burford. As he stepped onto the sidewalk outside his place of business he looked first to the left, and after having done so turned his head to look in the direction of his bad eye. He suddenly saw Burford within ten feet of him and immediately Burford told him to run. McLane says that Burford "throwed" his right hand toward his right trousers pocket where McLane knew he was accustomed to carry a gun. Feeling in imminent danger of death or great bodily harm, McLane drew the revolver that he was carrying and emptied it into Burford's body, firing five times in quick succession.

The State's version of the shooting is that it did not occur upon the sidewalk, though that is where Burford was when shot. The only other eyewitnesses were three men, one in a truck facing down Patrick Street, one on Patrick Street sidewalk with a pile of empty egg crates between him and the door of McLane's place of business when the first two shots were fired and for that reason seeing only the last three, and another walking down Patrick Street on the sidewalk. These witnesses are in substantial agreement, though exactly the same set of circumstances was not observed by each. The statements of all three conflict materially with that of McLane. Two of them say that the firing of the shots occurred in McLane's place of business, his hand with the revolver in it protruding from the half-open door without exposing his body to view. They are in agreement to the effect

that two shots were fired very close together and, after a brief pause, were followed by three in rapid succession, the inference that the State contends for being that three shots were fired after Burford was on the ground from the effect of the first two.

Burford was unarmed.

The accused had been tried under the same indictment at a preceding term and had been convicted and sentenced for murder in the second degree, but that judgment had been set aside by the Circuit Court of Kanawha County with the result that the accused could not again be put in jeopardy for murder in the first degree.

The first assignment of error relates to the court's declining to grant a continuance upon motion of the accused. The ground upon which the continuance was asked was the failure of a witness summoned by the accused to appear whose testimony related solely to the preceding purpose of Burford to kill McLane. The witness had been summoned at the first trial and had failed to appear because of his avowed reluctance to testify. The witness's disinclination was known to the attorneys for accused and although there was no other witness by whom the same state of facts could be established, there was other uncontradicted testimony concerning Burford's declared intention to kill McLane. Since this witness's testimony related to Burford's state of mind and not to a state of fact, save in a secondary sense, we believe that the trial judge's conclusion that it was only cumulative is sound and that his refusal to grant the continuance was not an abuse of discretion.

Assignment number two has to do with a dying declaration made by Burford in less than a half hour after he was shot, testified to by a doctor and a then captain of police and including Burford's statement: "I would not mind this so bad but I hate to leave four boys." Defendant's motion to strike out the last statement was overruled. This we believe was error. The then state of the victim's mind was important only to the extent of realizing that

he was in *extremis*. The effect of that condition upon the declarer as it concerns his immediate family, we believe is entirely irrelevant. The scope of a dying declaration should be confined to what, if otherwise offered, would be admissible testimony. *State* v. *Burnett,* 47 W. Va. 731, 738, 35 S. E. 983, 985; *Crookham* v. *The State,* 5 W. Va. 510, 513, bottom. The fact that the deceased was leaving four boys was in no way connected with the accused's guilt or innocence.

The physician introduced by the defendant to prove the fact the deceased had seriously wounded the accused was required to state over objection and privilege claimed that at the time Burford shot him he was suffering from syphilis. The State attempts to establish its revelancy by asserting that the accused's physical condition rendered him very much more susceptible to threats than a normal human being and that his nervous reactions were very much aggravated. The testimony does not show that that is a recognized symptom of syphilis, consequently we do not believe that the theory upon which the State undertook to show the relevancy of the testimony is sound. It was error to overrule the objection to it.

The fourth assignment of error has to do with an alleged inaccurate statement made by the prosecuting attorney in his closing argument, the objection to which the trial court overruled. Mrs. Carl Burford, the victim's widow, was used as a witness on behalf of the accused and on cross-examination was asked if she had not stated to a certain person that when this case was over Roy McLane, the accused, was going to divorce his wife and marry her. She denied making the statement. Lucas was placed on the stand and was asked if Mrs. Burford had not stated to him that she might marry McLane when "this matter was over". It will be noted that the phrasing of the question propounded to Lucas does not correspond with that asked Mrs. Burford, so that there would have been no direct contradiction in an affirmative answer by Lucas. Upon objection, this question was permitted, and

the prosecuting attorney stated that it was his purpose to recall Mrs. Burford so that her testimony and that of Lucas would be made to refer to the same statement. This the prosecuting attorney did not do. He did, however, in closing speak of having put Lucas on the stand and referred to the incident as though the question that he had asked Mrs. Burford, and that that he had asked Lucas to contradict, were substantially the same. Inasmuch as the two questions differed in substance this was an inaccurate statement that the prosecuting attorney should not have been permitted to make, and the overruling of defendant's objection to this argument was error.

The fifth assignment of error is over certain instructions given on behalf of the State over the objection of the defendant. The instructions objected to have been examined and we find no prejudicial error contained therein. State's Instruction No. 3 presents a question of first impression due to the fact that it describes the elements of first degree murder, being the offense charged in the indictment under which the accused had been tried, to a jury hearing the case but not empowered to find the accused guilty of a higher offense than murder in the second degree, he having been acquitted of first degree murder at his former trial. The giving of this instruction is assigned as error due to the fact that since the highest offense of which the accused could be found guilty is murder in the second degree, the references to deliberation, premeditation and malice aforethought would unduly inflame and influence the jury. In our opinion if there was before the jury sufficient proof to sustain the finding of a preconceived deliberate plan to kill, the trial court was justified in so instructing the jury. If the instructions referred to a state of fact sustained by admissible evidence not rendered irrelevant by the result of the former trial we can see no prejudicial error. Certainly the former verdict did not make the proof of premeditation irrelevant due to the fact that the jury's verdict would be legally restricted to an offense in which that is not an element.

The benevolence of the rule that a person cannot be put in jeopardy twice for the same offense is not intended to prevent the actual facts from influencing the trial jury. If the facts are established, legal conclusions which might be drawn therefrom are certainly not improper to explain to a jury, even though those' conclusions cannot lead to what otherwise might be a justified verdict on account of an intervening principle of law. It is the "life or liberty" of the accused that is protected by a time honored principle; (W.Va. Const., Art. 3, Sec. 5) not his guilt. There being no question raised as to the evidence justifying this instruction, but the assigned error being entirely a question of law, we are of the opinion that it did not constitute error for the trial court to approve it.

The sixth assignment of error has to do with instructions offered by the accused and declined by the court. The only instruction stressed in defendant's brief under this assignment is defendant's Instruction No. 15. In our opinion the elements covered by this instruction are adequately taken care of in other instructions given on behalf of the accused.

Assignments Seven, Eight and Nine are general assignments of error inclusive of the specific assignments already discussed and disposed of.

The judgments of the Circuit and Intermediate Courts of Kanawha County are reversed, a new trial awarded, and the case remanded to the latter court.

*Reversed.*