**Gene Tunney PETTRY, Petitioner,**

v.

**Otto C. BOLES, Warden of the West Virginia State Penitentiary, Respondent.**

**Civ. A. No. C-67-63-E.**

United States District Court
N. D. West Virginia.

Nov. 9, 1967.

No appearance, for petitioner.

Morton I. Taber, Asst. Atty. Gen., Charleston, W.Va., for respondent.

MAXWELL, Chief Judge.

The Petitioner, Gene Tunney Pettry, is presently serving an indeterminate sentence of not less than five nor more than eighteen years imposed following his conviction of second degree murder in the Circuit Court of Roane County in 1965. After exhausting the available State remedies, he applied to this Court for federal habeas corpus relief. In his petition he alleges that he was prevented from appealing his conviction before the Circuit Court because of the erroneous advice of trial counsel.

The Petitioner alleges that his attorney advised that, although his chances for reversal on appeal were excellent, he could be subsequently found guilty of first degree murder on retrial and receive a life sentence.

In answer to this Court's show cause order, the Respondent submitted, as Exhibit No. 5, an affidavit from the Petitioner's attorney. This affidavit confirmed the Petitioner's allegation, thereby making it unnecessary to hold a hearing since there is now no factual dispute on this issue.

The questions presented by the pleadings are, first, whether this advice was erroneous and, second, whether the advice operated to deny the Petitioner his right to appeal.

■ Under West Virginia law, it is well-settled that a conviction of second degree murder bars a later conviction of first degree murder involving the same victim, even though the second degree conviction is later reversed on appeal. State v. McLane, 126 W.Va. 219, 27 S.E.

2d 604 (1943). The court in the *McLane* case upheld an instruction which informed the jury of the elements of first degree murder, while directing it that second degree murder was the highest offense for which a verdict could be returned. The court, in rationalizing this apparent inconsistency, assumed that under the West Virginia Constitution, Art. 3, Sec. 5, the defendant could not have been tried again for first degree murder.

The United States Supreme Court has not passed on the question of whether the double jeopardy provisions of the Fifth Amendment apply to the states. See Cichos v. Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966). However, as a matter of federal law, the court held in Green v. United States, 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957) that the jury in the first trial had in effect acquitted the defendant of the more serious offense, thereby barring subsequent prosecution for that offense. The court rejected the argument that an appeal would waive the defense of former jeopardy with these words:

> Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy. [355 U.S. at 193–194, 78 S.Ct. at 227.]

Additionally, the Court of Appeals for the Fourth Circuit has indicated that it considers portions of the double jeopardy clause of the Fifth Amendment to be applicable to the States. Patton v. State of North Carolina, 381 F.2d 636 (4th Cir., June 14, 1967) at Footnote 20.

Since it appears from the pleadings that the Petitioner was misinformed as to the possible consequence of appealing his conviction, little would be accomplished by attempting to judicially determine what effect this had on his subsequent decision not to take an appeal. There is, in addition, a great deal in the record now before this Court which indicates the general mental instability of the Petitioner at the time of the offense and at the trial. His attorney states in the affidavit earlier referred to that:

> I cannot say that Mr. Pettry had all of his faculties at the time he agreed to abide by the verdict of the jury and the sentence of the Court.

In light of the foregoing it is difficult to weigh the effect of the erroneous advice of his counsel on the later decision not to appeal.

■ It is, however, the determination of this Court that the erroneous advice of the trial counsel played a significant part in the Petitioner's later decision not to appeal. This worked to deprive him of the equal protection of the laws guaranteed by the Fourteenth Amendment.

The Petitioner assuredly was influenced in his decision by the advice given by his counsel. Whether he would have appealed if counsel had correctly advised him of his implied acquittal of first degree murder is a moot question at this point. In all likelihood, he would have appealed if correctly apprised of the situation, since there would have been nothing for him to lose and the possibility of a new trial to gain.

■■ Since this Court has determined that the Petitioner has been unconstitutionally deprived of his right to appeal[1] the judgment imposed upon him by

---

1. There is no appeal of right to the West Virginia Supreme Court of Appeals from a decision of a Circuit Court. West Virginia Code, Section 58–5–1, reads:

   A party to a controversy in any circuit court *may obtain* from the supreme court of appeals * * * an appeal from, or a writ of error or supersedeas to, a judgment, decree or order of such circuit court * * *. (Emphasis supplied.)

   Although it is discretionary with the Supreme Court of Appeals whether an appeal will be permitted, each defendant has the right to petition that court for an appeal, for otherwise there would be a denial of the equal protection of the law guaranteed by the Fourteenth Amendment.

   It should also be noted that the word "appeal" when used in the context of this opinion refers to this constitutional right to petition for an appeal and not

the Circuit Court of Roane County, the one question which remains is the manner in which this wrong can be most expeditiously rectified.

■ Unlike the Supreme Court of Appeals of Virginia[2] the West Virginia Supreme Court of Appeals has consistently refused to permit late appeals. See e. g. State v. Legg, W.Va., 151 S.E.2d 215 (1966); State ex rel. Davis v. Boles, W. Va., 151 S.E.2d 110 (1966); State ex rel. Thompson v. Boles, W.Va., 151 S.E.2d 112 (1966); and State ex rel. Cephas v. Boles, 149 W.Va. 537, 142 S.E.2d 463 (1965). The failure of a criminal defendant to comply with the provisions of West Virginia Code, 1931, Section 58–5–4, as amended,[3] constitutes a jurisdictional defect which precludes the Supreme Court of Appeals from considering the merits of the appeal.

The holding in the *Legg* case was that the filing of a motion for a new trial, the obtaining of a stay in order to appeal along with several other steps, taken with the intent to perfect an appeal, were not "substantial compliance" with West Virginia Code, Section 58–5–4.[4] The holdings in the other three cases which dealt with the question of late appeals are not especially relevant to the question now before this Court, since each of these decisions seems to be based on a factual finding that the petitioner himself was responsible for the failure to perfect the appeal within the statutory time periods.

The issue which the Petitioner in the instant case presents to this Court is the denial of his appeal because of certain acts and omissions on the part of his state court trial counsel. This is a very different question from whether a court will entertain a late appeal.

■■ Time limits for the filing of an appeal are necessary and proper to ensure that a given case is brought to a relatively speedy termination. "The law's delay" of which Shakespeare complained would indeed be onerous if the losing party in either a civil or criminal action could store up his appeal rights and then attempt to enforce them whenever the time seemed most opportune. No judgment would ever be final if this were permitted. Since there is a time when all litigation must end, it seems reasonable to draw the line at the moment when the statutory period for filing an appeal expires.

It should perhaps be noted by way of comparison that the time limits for filing a criminal appeal in the federal courts are even more stringent than those of the West Virginia courts. Rule 37(a) (2) of the Federal Rules of Criminal Procedure requires a defendant to file his notice of appeal within 10 days from the date of the entry of the judgment or order appealed from.

There are, however, several factors in federal practice which militate against the harshness of the 10 day time period. First, Rule 32(a) (2) of the Rules requires the court, in a case where the defendant has gone to trial on a plea of not

to the appeal itself. The Supreme Court of Appeals has, and exercises, the right to dismiss a petition without permitting a full hearing on the question presented in the petition.

2. Cabaniss v. Cunningham, 206 Va. 330, 143 S.E.2d 911 (1965). The court here seemed to decide the question of a late appeal *sub silentio* by remanding the appellant's petition to the trial court and directing the lower court "appoint counsel to assist plaintiff in applying for an appeal from his conviction * * *." 143 S.E.2d at 914.

3. This section of the West Virginia Code sets forth the steps which must be taken

to appeal a judgment of conviction in a criminal case. The defendant must file a notice of intent to file his petition within sixty days from the date of entry of the judgment or order appealed from. Then his petition must be filed within eight months from the date of entry of the judgment or order.

4. Two of the judges of the Supreme Court of Appeals agreed with the majority that the statutory requirement was jurisdictional but believed that the steps taken by Legg's counsel constituted "substantial compliance" with the statute. 151 S.E.2d at 220.

guilty, to advise the defendant of his appeal rights after imposing sentence.[5]

Second, and more importantly, the federal post conviction review statute [6] affords a means of easy and quick redress in cases where the defendant has been deprived of his appeal because of the negligence or carelessness of the attorney representing him.

A motion is made under Section 2255 to vacate the sentence imposed because of the unconstitutional denial of the defendant's right to appeal. If the allegation is found to be true, then the court may vacate and immediately reimpose the original sentence, thereby "recreating" the defendant's appeal rights. After the reimposition of the sentence, the defendant would have 10 days in which to file his notice of appeal. Dillane v. United States, 121 U.S.App.D.C. 354, 350 F. 2d 732, 733 (1965).

This approach has been criticized by some writers and courts because of its "unsettling effect upon the stability of judicial determinations." [7] See e. g., Mitchell v. United States, 104 U.S.App.D.C. 57, 259 F.2d 787, cert. denied 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

The argument overlooks the practicality of this solution to the problem of fashioning a remedy to correct the situation created by an unconstitutional denial of an appeal. If a federal court could not vacate and then reimpose the sentence in cases such as these, the only alternative would be to order a new trial. And, whatever the difficulties involved in reviewing a vintage case on appeal, they are small indeed when compared to the problems confronting counsel who would undertake to re-try a case after the passage of several years. The court files and the transcript of the trial testimony are immediately accessible in the federal system for a period of at least 10 years [8] so there is little practical difficulty in preparing the record for appeal barring, of course, such unforeseeable problems as the death of the reporter or the accidental loss of the court file.[9]

■ Also, there is an additional reason for utilizing the remedy afforded by Section 2255 in cases where there has been an unconstitutional denial of the right to appeal. Since the constitutional deprivation did not occur until after judgment had been pronounced, no useful purpose would be served by requiring the prosecution and the defendant to go through another trial in the same court, and perhaps before the same judge, in order to rectify an error which occurred *after* the trial was concluded. To set aside an otherwise flawless trial, simply because of the denial of an appeal does

---

5. This amendment to Rule 32 went into effect on July 1, 1966. The great virtue of advising defendants of their appeal rights in open court is that there is no question as to the fact that the defendant knew of his right to take an appeal and to have a lawyer appointed to represent him on the appeal. A court which might later review his conviction would not be forced to decide the difficult factual questions of whether counsel informed him of his appeal rights and whether he manifested intent to appeal.

6. 28 U.S.C. § 2255. The main purpose of the codification here was to require the petitioner to bring his suit in the court of his conviction rather than in the court having jurisdiction over the place of his incarceration. See e. g., United States v. Hayman, 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

7. Uelmen, Post-Conviction Relief for Federal Prisoners—A Survey and a Suggestion—Under 28 U.S.C. 2255, 69 W. Va.Law Rev. 277, 282 (1967).

8. 28 U.S.C. § 753.

9. West Virginia Code, Section 51–4–3, requires the Circuit Clerk to preserve all papers filed in his office "until legally delivered out." However, there does not seem to be any statute requiring the reporter to file his shorthand notes with the Clerk in the absence of an appeal taken within the statutory period. See West Virginia Code, Section 51–7–4. As a matter of practice, most reporters do give their notes to the Clerk for safekeeping. This seems to be especially true in criminal cases.

not serve the doctrines of either judicial economy, effectiveness or efficiency, if there is a simpler method by which the defendant's rights can be protected.[10]

The question of an appropriate remedy in these cases becomes especially acute when a federal court must order a new trial in a state proceeding because of the denial of an appeal.[11]

■ The passage of a comprehensive post conviction review statute by the West Virginia Legislature in 1967[12] might afford this Court with another alternative in the instant case than ordering the Petitioner's retrial.[13] Section 53–4A–7(c) of the statute contains provisions that seem to afford a broad grant to the state courts to fashion appropriate remedies in cases in which it is determined that relief should be granted.

> When the court determines to deny or grant relief, as the case may be, the court shall enter an appropriate order with respect to the conviction or sentence in the former criminal proceedings and such supplementary matters as are deemed necessary and proper to the findings in the case, including, but not limited to, remand, *the vacating or setting aside of the plea, conviction and sentence,* rearraignment, retrial, custody, bail, discharge, *correction of sentence and resentencing,* or other matters which may be necessary and proper. (Emphasis supplied.)

The issue presented in the instant case is not precisely covered by the above statute, but the vacating and resentencing of the Petitioner so that he would be entitled to appeal his conviction would seem to be consistent with the intent of the Legislature in passing the post-conviction statute. This result would seem particularly appropriate in light of the last sentence of Section 53–4A–10 which reads: "The provisions of this article shall be liberally construed so as to effectuate its purposes." Furthermore, it should be noted that the state statute is much more broadly worded than 28 U.S. C. § 2255, the statutory basis for the federal procedure.

■ Since a better and more economical method of remedying the denial of the Petitioner's appeal seems to now be available under the post-conviction review statute than was heretofore present, an order will be entered directing the Respondent to return the Petitioner to the Circuit Court of Roane County within a reasonable time from the date of entry of an order carrying out the findings herein for the vacating, and subsequent resentencing of Petitioner herein on his 1965 conviction, if that court should decide such a procedure is permissible under the West Virginia post-conviction review statute. In the event that the said Circuit Court should determine that resentencing of Petitioner is not permissi-

10. If the Petitioner had no possible grounds for reversal, then he is not injured by the denial of his appeal. The words "ineffective assistance of counsel" should not become a talismanic phrase guaranteeing an automatic new trial in cases such as the one now before this Court.

11. See generally, Moore, 1A Federal Practice, Section 0.230. The usual avenue of redress in these cases is to file a petition for a writ of habeas corpus charging the ineffective assistance of counsel because of counsel's failure to perfect an appeal. See Davis v. Boles, 247 F.Supp. 751 (N.D.W.Va.1965). One of the harmful by-products of the remedy, which has heretofore been available, is that it creates a situation wherein the best as-

sistance which counsel can give his client is to fail to protect his appeal rights. This is not to suggest that a conscientious attorney would attempt this ruse but the possibility of abuse is present. Before the enactment of the West Virginia post-conviction relief statute, a bare charge of this nature would almost automatically guarantee a new trial.

12. West Virginia Code, Section 53–4A–1 et seq. (Michie 1966, Michie Supp.1967).

13. This Court does not presume to possess the power to compel the State to retry a criminal defendant, and if the State does not elect to retry him, the only means of affording the Petitioner redress for the constitutional deprivation is to order his outright release.

ble under the statute, then criminal proceedings must be initiated against the Petitioner within 60 days from such decision of said Circuit Court or he shall be entitled to his release.[14]

14. Since this is a novel question of State law which the Circuit Court must determine, the time limit which this Court has set for the initiation of criminal proceedings against the Petitioner in the event that the Circuit Court finds that it is unable to vacate and resentence shall not commence to run until after a determination of this question by the West Virginia Supreme Court of Appeals, in the event that either party appeals the decision of the Circuit Court or the question is certified to the Supreme Court of Appeals.